(41 P.3d 290)
No. 85,726

STATE OF KANSAS, *Appellant*, v. FARRUKH B. SHEIKH, *Appellee*.

Opinion filed September 7, 2001.

*Rick J. Scheufler*, county attorney, and *Carla J. Stovall*, attorney general, for appellant.

*Daniel C. Estes*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellee.

Before PIERRON, P.J., GERNON, J., and BUCHELE, S.J.

GERNON, J.: This is an appeal by the State of the dismissal of its complaint against Farrukh B. Sheikh on two drug counts, attempted manufacture of methamphetamine and possession of drug paraphernalia.

The trial court dismissed the attempt count for lack of probable cause, and the drug paraphernalia count was dismissed when the judge found, as a matter of law, that the items were not drug paraphernalia.

Sheikh was driving an automobile which was involved in an accident. He exhibited behavior at the scene which aroused the suspicions of the officers, who asked if they could search his automobile. Sheikh consented, and during the search, officers located a backpack in the trunk which contained an empty 2-liter pop bottle, a 48-inch length of clear plastic tubing, four lithium batteries, a can of starting fluid, two cans of gas-line antifreeze, a container of drain opener, a bag of rock salt, and two bottles containing the contents of 14 boxes of cold tablets (48 pills per box). Officers also found .25 caliber ammunition in Sheikh's pocket and a handgun under the driver's seat of the automobile.

During a custodial interview and after he was *Mirandized*, Sheikh stated that he was on his way to someone's home to cook methamphetamine with that person. According to Sheikh, this was one of two men who had taught him how to make methamphetamine, and he had made methamphetamine once by himself. He described the process to the detective, and the detective believed it to be a valid recipe.

Sheikh also admitted that the items found in the backpack were his and that he had purchased them to use in making methamphetamine. He stated that he had removed the pills from their original packaging, the person he planned to cook with was going to supply the anhydrous ammonia, and they would split the finished product.

When the State appeals the dismissal of a complaint, an appellate court's review of an order discharging the defendant for lack of probable cause is de novo. This court must view the sufficiency of

the evidence as would a detached magistrate at a preliminary hearing by drawing inferences favorable to the prosecution in determining whether there is sufficient evidence to cause a person of ordinary prudence and caution to entertain a reasonable belief of the accused's guilt. The evidence needs only to establish probable cause, not guilt beyond a reasonable doubt. The court's role is not to determine the wisdom of the decision to file charges or to determine whether the possibility of a conviction is likely or remote. *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 (2000).

The State contends that the act by Sheikh of opening 14 boxes of pseudoephedrine and removing approximately 672 pills from their bubble packs, plus the act of putting these and other items in his vehicle, along with a firearm, and driving from Lawrence to Great Bend, constitute overt acts and not just preparation.

The attempt statute, K.S.A. 21-3301, states in part:

"(a) An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime.

"(b) It shall not be a defense to a charge of attempt that the circumstances under which the act was performed or the means employed or the act itself were such that the commission of the crime was not possible."

In *State v. Garner*, 237 Kan. 227, 237-40, 699 P.2d 468 (1985), the Kansas Supreme Court discussed the crime of attempt, stating:

"The nature of the crime of attempt was discussed in depth in *State v. Gobin*, 216 Kan. 278, 531 P.2d 16 (1975). In *Gobin*, the court stated that the three essential elements for an attempt under K.S.A. 21-3301 are:

'(1) the intent to commit the crime;

(2) an overt act toward the perpetration of the crime, and

(3) a failure to consummate it. . . .' p. 281.

"The opinion quotes the comment of the committee on pattern jury instructions covering attempts as follows:

" 'A problem inherent in the law of attempts concerns the point when criminal liability attaches for the overt act. On the one hand mere acts of preparation are insufficient while, on the other, if the accused has performed the final act necessary for the completion of the crime, he could be prosecuted for the crime intended and not for an attempt. The overt act lies somewhere between these two extremes and each case must depend upon its own particular facts. . . .' PIK Criminal 55.01, p. 105.)' p. 281.

"The court in *Gobin* observed that it becomes apparent from reading the Kansas cases that no definite rule as to what constitutes an overt act for the purposes of attempt can or should be laid down. Each case must depend largely on its particular facts and the inferences which the jury may reasonably draw therefrom. The problem should be approached with a desire to accomplish substantial justice. It has been said that mere preparation is not sufficient. The accused must have taken steps beyond mere preparation by doing something directly moving toward and bringing nearer the crime he intends to commit. It has been said that there must be some appreciable fragment of the crime committed.

. . . .

". . . In a general way, it may be said that preparation consists of devising or arranging the means or measures necessary for the commission of the offense and that the attempt is the direct movement toward the commission after the preparations are made. 21 Am. Jur. 2d, Criminal Law § 159, p. 314. The authorities are in agreement that it is difficult to formulate any precise rule as to how close the overt act must come to the attempted accomplishment of the ultimate criminal result. It has been said that while the act need not be the last proximate act to the consummation of the offense, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement toward the commission of the offense after the preparations are made."

The question is perhaps answered best by the language in *U.S. v. Savaiano*, 843 F.2d 1280 (10th Cir. 1988). In finding that there was sufficient evidence of an overt act, the court in *Savaiano* noted:

"The purchase of a recipe might not be an attempt by itself. But, proceeding to obtain the required chemicals called for in the recipe, and actively locating and attempting to meet with a chemist for instruction, are certainly acts 'strongly corroborative of the actors' criminal purpose.' They are overt acts 'pointed directly to the commission of the crime charged.' The realistic emphasis on what had been done, rather than dwelling on what remained to be done is consistent with our decision in *United States v. Prichard*, 781 F.2d 179, 181-82 (10th Cir. 1986), in which we held that reconnoitering the object of a crime together with collecting the instruments to be used in that crime, constituted an attempt." 843 F.2d at 1297-98.

*Savaiano* provides sufficient basis, when applied to the facts here, to lead us to conclude that the charges of attempt should not have been dismissed. We reverse and remand with instructions that the charges be reinstated. Since the possession of drug paraphernalia charge was linked to the attempt charge, it also should be reinstated.

Reversed and remanded with directions.