Nos. 89,603
89,656

STATE OF KANSAS, *Appellee/Cross-appellant,* v. JAMIE C. STEVENS,
*Appellant/Cross-appellee.*
(101 P.3d 1190)

Opinion filed December 3, 2004.

*Patrick H. Dunn*, assistant appellate defender, argued the cause and was on the briefs for appellant/cross-appellee.

*Thomas R. Stanton*, deputy district attorney, argued the cause, and *Keith E. Schroeder*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Jamie Stevens was convicted by a jury of attempted manufacture of methamphetamine, possession of ephedrine or pseudoephedrine with the intent to use it to manufacture methamphetamine, and possession of drug paraphernalia with the intent to use it to manufacture methamphetamine. The jury found him not guilty of manufacture of methamphetamine. Stevens was sentenced to 152 months' imprisonment for attempted manufacture of methamphetamine, 11 months for possession of ephedrine or pseudoephedrine, and 11 months for possession of drug paraphernalia, with a controlling sentence of 152 months. Stevens appealed his convictions and sentence (Case No. 89,656). The State cross-appealed his sentence for possession of ephedrine or pseudoephedrine (Case No. 89,603). The appeals were consolidated for purposes of argument and decision under Case No. 89,603, Stevens was designated appellant/cross-appellee, and the State was desig-

nated appellee/cross-appellant. The court transferred the case from the Court of Appeals pursuant to K.S.A. 20-3018(c).

Stevens raises the following issues on appeal:

1. Are the charges of attempted manufacture of methamphetamine and possession of ephedrine or pseudoephedrine multiplicitous?

2. Are the charges of attempted manufacture of methamphetamine and possession of drug paraphernalia with the intent to manufacture methamphetamine multiplicitous?

3. Are the charges of possession of ephedrine or pseudoephedrine and possession of drug paraphernalia with the intent to manufacture methamphetamine multiplicitous?

4. Should the trial court have instructed the jury that possession of drug paraphernalia with the intent to manufacture methamphetamine is a lesser included offense of attempted manufacture of methamphetamine and manufacture of methamphetamine?

5. Was Stevens denied the right to a unanimous jury verdict on his conviction for possession of drug paraphernalia with the intent to manufacture methamphetamine?

6. Was Stevens deprived of a fair trial by cumulative errors?

7. Was it error for the trial court to sentence Stevens for a drug severity level 1 felony for attempted manufacture of methamphetamine?

The State's cross-appeal raises the following issue:

1. Did the trial court err in sentencing Stevens to a level four drug felony for possession of ephedrine or pseudoephedrine?

## FACTS

On January 31, 2002, Sheriff's Deputy Corey Graber went up to the door at 1215 East Avenue A in Hutchinson to investigate a reported domestic situation. As he approached the door, he heard the voices of a male and female inside the house. The woman was Anita Green, who the deputy had been looking for. She was taken into custody. The man Graber was looking for, Vernon Walters, was not there, but Stevens was.

Because Graber knew that there were several outstanding arrest warrants for Walters, he asked Stevens if Walters or anyone else was in the residence and Stevens said no. Graber asked if he could come in and look around. Saying it was not his house, Stevens allowed Graber to come in. As soon as he entered the house, Graber noticed a chemical odor. He identified the smells of ether and lithium, which are used in manufacturing methamphetamine. Then he saw a third person in the house, Brian Green.

Graber made a quick sweep through the house to make sure no one else was there. In the bathroom, he noticed a container with four dirty spoons in it and a cotton ball with one of the spoons. He knew that spoons and cotton sometimes are used for injecting methamphetamine. In a bedroom, he saw an unzipped gray duffel bag that contained a toothbrush and syringe in a glass jar.

Graber left the house to get a search warrant. He and officers in the drug unit returned to search the house pursuant to the warrant. Near the east wall of the living room, they found a black bag containing Coleman fuel, starter fluid, glass jars, plastic bowls, a wooden spoon, coffee filters, rubber gloves, rock salt, small plastic baggies, rubber tubes, and paper funnels. All the items were things that may be used in the manufacture of methamphetamine. Near the west wall of the living room, they found starter fluid, a plastic container, a plastic spoon, a plastic bowl, and rubber tubing. On the floor in the living room, more items were found that are consistent with the manufacture of methamphetamine—glass and plastic Tylenol bottles with crushed pills, a small plastic container with crushed pills, a 2-quart bottle with clear liquid, and a metal box containing three peeled lithium battery casings. From a coat that was on a chair in the living room, the officers recovered a bag containing 15 peeled and 5 unpeeled lithium batteries, three bags containing powder, a lighter, a Swisher Sweets pack, a leather case, a pocketknife, and a glove. In a bedroom, a gray bag was found that contained two plastic jars and one glass with a toothbrush and syringe in it, starter fluid, and a razor blade. Also in the bedroom they found a blue sack that contained Epsom salt and Coleman fuel. A cup of rock salt was found by the bathtub. Also in the

bathroom they found spoons, a broken and burnt light bulb, a gassing generator with tubing, a plastic container of rock salt, a bag of rock salt, and tin foil. Graber described how the gassing generator could be used with rock salt and sulfuric acid in the manufacture of methamphetamine.

Four fingerprints matching those of Stevens were found on various seized items. Stevens testified that he had been to Walters' house several times before to buy speed or methamphetamine. When Stevens arrived on January 31, Walters let him in, and then Walters said that he was going to leave to get some juice but that he would be right back. Stevens testified that while he was alone in the living room, he began looking around for drugs. Then, after Anita Green was taken into custody, he looked for drugs in among the things in the bedroom. Detective Harcrow testified that during the investigation Stevens' brother identified the coat from the living room chair as belonging to Stevens. Stevens' brother testified at trial that he told the detective he was not sure if the coat belonged to Stevens. Stevens admitted during questioning that his nickname was Batman. The police had been getting a lot of intelligence information about someone called Batman, who was allegedly an anhydrous ammonia thief.

## APPEAL

Stevens first contends that the charges of attempted manufacture of methamphetamine and possession of ephedrine or pseudoephedrine are multiplicitous because the possession of ephedrine or pseudoephedrine with the intent to manufacture methamphetamine is an overt act for the purpose of establishing attempted manufacture of methamphetamine. According to Stevens, possession therefore is a lesser included offense of attempted manufacture. He relies on *State v. Martens*, 273 Kan. 179, 42 P.3d 142, *modified* 274 Kan. 459, 54 P.3d 960 (2002), and *State v. Bowers*, Case No. 87,239 filed July 25, 2003, an unpublished opinion of the Court of Appeals. Stevens attached a copy of the *Bowers* opinion as Appendix A to his brief pursuant to Rule 7.04(f)(2)(iii) (2003 Kan. Ct. R. Annot. 47). In *Martens*, the trial court convicted

the defendant of both attempted manufacture and actual manufacture of methamphetamine, and this court remanded for determination of which offense he was guilty. In *Bowers*, the case was reversed on another issue. The Court of Appeals added that upon retrial the jury was to be instructed on possession of pseudoephedrine as a lesser included offense of the manufacture of methamphetamine rather than as a separate charge.

The State contends that *State v. Campbell*, 31 Kan. App. 2d 1123, 78 P.3d 1178 (2003), governs this case. In *State v. Campbell*, 279 Kan. 1, 106 P.3d 1129 (2004), we affirmed the Court of Appeals' holding that convictions on the charge of manufacture of methamphetamine and possession of ephedrine or pseudoephedrine are not multiplicitous. Because the elements of attempted manufacture of methamphetamine and manufacture of methamphetamine differ, the holding of *Campbell* is not on point.

The parties agree that whether convictions are multiplicitous is a question of law subject to unlimited review. See *State v. Robbins*, 272 Kan. 158, 171, 32 P.3d 171 (2001).

Multiplicity is the charging of two or more counts in a complaint where only a single wrongful act is involved. *State v. Fritz*, 261 Kan. 294, Syl. ¶ 3, 933 P.2d 126 (2000). The harm of multiplicity is that it creates the potential for multiple punishments for a single offense. In *Robbins*, the court stated:

> "In examining a multiplicity issue, we are mindful that a single offense may not be divided into separate parts and a single wrongful act may not generally furnish the basis for more than one criminal prosecution; offenses do not merge where each offense requires proof of a fact not required in proving the other; and offenses do not rise out of a single wrongful act where they are committed separately and severally at different times and places." 272 Kan. at 172 (citing *State v. Mincey*, 265 Kan. 257, 265, 963 P.2d 403 [1998]).

K.S.A. 21-3107(2) was amended in 1998 so that the current statute "in essence mirrors the common-law elements test, thereby leaving it as the only remaining test for multiplicity." *State v. Schuette*, 273 Kan. 593, 601, 44 P.3d 459 (2002). K.S.A. 2003 Supp. 21-3107(2) provides:

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:
(a) A lesser degree of the same crime;
(b) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;
(c) an attempt to commit the crime charged; or
(d) an attempt to commit a crime defined under subsection (2)(a) or (2)(b)."

The test to determine whether the charges in a complaint or information are multiplicitous is whether each offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous. *Fritz*, 261 Kan. 294, Syl. ¶ 4.

In the trial court, the defendant based several motions on the argument that some of the counts of the complaint were multiplicitous. At a hearing on defendant's posttrial motions, the trial court said simply, "I don't think these things merge."

The jury was instructed that the elements of attempted manufacture of methamphetamine are: (1) Defendant performed an overt act toward the commission of the crime of manufacture of a controlled substance; (2) he did so with the intent to commit the crime of manufacture of a controlled substance; and (3) he failed to complete commission of the crime of manufacture of a controlled substance. The jury was further instructed that "[a]n overt act necessarily must extend beyond mere preparation made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the complete offense. Mere preparation is insufficient to constitute an overt act."

The bag of ephedrine or pseudoephedrine that was found in Stevens' coat was a powdered substance that had been ground from decongestant tablets. In closing argument, the prosecutor told the jurors that removal of Sudafed pills from their packaging was the overt act that marked the shift from preparation to the process of manufacturing methamphetamine. He stated:

"[C]learly your first overt act is when they start popping those pills. It is no longer preparation. The preparation is gathering everything together. Because as you gather things together, when you get them all together, you can say . . . I really

think this isn't worth it; and you turn and walk away. But once you pop that first pill out and you empty those Sudafed box[es] of their pills, once you grind them up, you have started the process. And if you started the process, then you've attempted to manufacture methamphetamine."

Whether this court agrees with the prosecutor's characterization of the overt act or not, the jury deliberated the question of Stevens' guilt on that basis. The jury was instructed that, in order to establish the charge of possession of ephedrine or pseudoephedrine, the State had to establish that Stevens knowingly possessed ephedrine or pseudoephedrine with intent to use the product as a precursor to any illegal substance. The jury also was instructed that, in order to establish the charge of attempted manufacture of methamphetamine, the State had to show an overt act toward the manufacture of methamphetamine, done with the intent to manufacture, and failure to complete the manufacture. The prosecutor told the jury that Stevens' possession of ephedrine or pseudoephedrine in the form of ground-up Sudafed was the evidence of an overt act. In other words, in the circumstances of this case, the State's proof of possession of ephedrine or pseudoephedrine with intent to use it to manufacture methamphetamine is the same as its proof of the first two elements of attempted manufacture of methamphetamine. Thus, the possession offense does not require proof of an element not necessary to prove the attempted manufacturing offense. The attempted manufacture and possession charges are multiplicitous in the circumstances of this case. Stevens' conviction and sentence for possession of ephedrine and pseudoephedrine with intent to use it to manufacture methamphetamine should be set aside.

Stevens argues that possession of drug paraphernalia with intent to manufacture methamphetamine and attempted manufacture of methamphetamine are multiplicitous charges stemming from a single act. The question is whether each offense requires proof of an element not necessary to prove the other offense. If so, they are not multiplicitous; if not, they are. See *Fritz*, 261 Kan. 294, Syl. ¶ 4.

With regard to the possession of drug paraphernalia offense, the prosecutor told the jurors: "[A]ll of the testimony that you have

heard indicates that the items that were . . . possessed in the house were for the manufacture of methamphetamine. . . . The coffee filter, the gloves, the lithium batteries, the . . . tubing, the gas generator, all those things are paraphernalia to be used to manufacture methamphetamine." With regard to the attempted manufacture of methamphetamine offense, the prosecutor argued to the jury that peeling the lithium batteries, like removing Sudafed tablets from the packaging, constituted an overt act: "The lithium batteries, that's another indication of an overt act. What is somebody going to do with a peeled lithium battery? You can't really stick any of it in your camera. The whole purpose of peeling the battery is to finish the process. So clearly, again, this crime has been committed."

In 2002, the legislature amended K.S.A. 65-7006 to add lithium metal as a substance whose possession and usage to manufacture a controlled substance was criminalized. L. 2002, ch. 155, sec. 4. That action postdates the time of Stevens' case and is therefore inapplicable here.

In its brief on appeal, the State's argument is that peeling the lithium batteries was an overt act and that it was separate from possession of drug paraphernalia. In its brief, the State asserted:

"The defendant also possessed batteries that had been peeled to remove lithium strips from them for the purpose of manufacturing methamphetamine. [*State v. Sheikh*, 30 Kan. App. 2d 188, 41 P.3d 29 (2001),] would apply to these facts as well to indicate that these actions are overt acts toward the perpetration of the crime of manufacture of methamphetamine. The record is replete with overt acts committed toward the crime of manufacture of methamphetamine, and to suggest that the only overt act that the jury relied upon was the possession of the drug paraphernalia is ludicrous."

It was the prosecutor, however, who included the lithium batteries among the items of drug paraphernalia in closing argument.

The *Sheikh* opinion, (authored by now Justice Gernon), according to the State, stands for the proposition that peeled batteries, like Sudafed removed from its packaging, are evidence of an overt act. *Sheikh* was a State's appeal from dismissal of a complaint against Sheikh for attempted manufacture of methamphetamine and possession of drug paraphernalia. He had a backpack contain-

ing, among other things, clear plastic tubing, lithium batteries, starting fluid, and pills that had been removed from 14 boxes of cold tablets (48 pills per box), and he admitted purchasing the items to use in making methamphetamine. The State contended that Sheikh's act "of opening 14 boxes of pseudoephedrine and removing approximately 672 pills from their bubble packs, plus the act of putting these and other items in his vehicle, along with a firearm, and driving from Lawrence to Great Bend, constitute overt acts and not just preparation." 30 Kan. App. 2d at 190. After noting that an overt act is not precisely defined, the Court of Appeals concluded that the charges should not have been dismissed. 30 Kan. App. 2d at 191.

Here the prosecutor told the jurors that the peeled lithium batteries were the evidence of an overt act toward the manufacture of methamphetamine. The jury was given no instruction inconsistent with the prosecutor's argument. In these circumstances, the State's proof of possession of peeled lithium batteries with intent to use them to manufacture methamphetamine is the same as its proof of the first two elements of attempted manufacture of methamphetamine. Thus, the possession offense, when limited to possession of the peeled lithium batteries, does not require proof of an element not necessary to prove the attempted manufacturing offense. The possession of drug paraphernalia offense, however, was not limited to the peeled lithium batteries. According to the prosecutor's closing argument, the paraphernalia also included a coffee filter, gloves, tubing, and a gas generator, in addition to the lithium batteries. The prosecutor did not argue that possession of these items of paraphernalia constituted an overt act toward manufacture of methamphetamine. The offense of possession of paraphernalia requires proof of the element of possession of the drug paraphernalia that is not necessary to prove attempted manufacture. The offense of attempted manufacture requires proof of the element of an overt act, which is not necessary to prove the possession of drug paraphernalia offense. The offenses of attempted manufacture of methamphetamine and possession of drug paraphernalia (not including the peeled lithium batteries) are not multiplicitous.

Stevens next argues that possession of ephedrine or pseudo-ephedrine with intent to manufacture methamphetamine and possession of drug paraphernalia with intent to manufacture meth-amphetamine are multiplicitous charges stemming from a single act. In view of our determination that Stevens' conviction and sentence for possession of ephedrine and pseudoephedrine with intent to use to manufacture methamphetamine should be set aside, we need not address this argument.

Stevens also argues that the trial court should have instructed the jury that possession of drug paraphernalia with the intent to manufacture methamphetamine is a lesser included offense of attempted manufacture of methamphetamine and manufacture of methamphetamine.

Stevens was acquitted of the manufacture of methamphetamine. Whether the trial court should have instructed the jury on a lesser included offense of manufacture of methamphetamine is moot.

He argues that the possession of drug paraphernalia is a lesser included offense of attempted manufacture of methamphetamine. Whether a crime is a lesser included offense is a question of law over which an appellate court exercises unlimited review. *State v. Belcher*, 269 Kan. 2, 4, 4 P.3d 1137 (2000). Because Stevens' trial counsel did not request that the jury be instructed on possession of drug paraphernalia as a lesser included offense of attempted manufacture of methamphetamine, the court will review only for clear error. See *State v. Saiz*, 269 Kan. 657, Syl. ¶ 1, 7 P.3d 1214 (2000); K.S.A. 2003 Supp. 22-3414(3).

Stevens' argument seems to be that possession of drug paraphernalia is a lesser included offense of attempted manufacture of methamphetamine because the possession offense is a crime where all elements of the lesser crime are identical to some of the elements of the crime charged, as indicated in K.S.A. 2003 Supp. 21-3107(2)(b). In the discussion of Issue 2, we saw that possession of drug paraphernalia (other than the peeled lithium batteries) and attempted manufacture of methamphetamine are not multiplicitous offenses because each offense requires proof of an element not necessary to prove the other offense. Thus, all elements of

possession of drug paraphernalia are not identical to some of the elements of attempted manufacture of methamphetamine.

Stevens next argues that he was denied the right to a unanimous jury verdict on his conviction for possession of drug paraphernalia with the intent to manufacture methamphetamine.

There was evidence of possession of drug paraphernalia of two different kinds—for use in manufacturing a controlled substance and for use in using a controlled substance. Possession of drug paraphernalia with intent to use it to manufacture a controlled substance is a severity level 4 felony. K.S.A. 65-4152(a)(3) and (c). Possession of drug paraphernalia for introducing a controlled substance into the human body is a misdemeanor. K.S.A. 65-4152(a)(2) and (b).

Stevens characterizes this as a multiple acts case and contends that, because there was evidence that would have supported his conviction of either offense, a unanimity instruction was necessary. In *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994), the court discussed multiple acts cases:

" 'In multiple acts cases, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt. [Citations omitted.]' 110 Wash. 2d at 410."

At trial, Stevens neither requested a unanimity instruction nor objected to the lack of one. Hence, the court reviews for clear error. *State v. Banks*, 273 Kan. 738, 743-44, 46 P.3d 546 (2002).

In *State v. Hill*, 271 Kan. 929, 939, 26 P.3d 1267 (2001), the court established a harmless error analysis to be applied when it is contended that a unanimity instruction should have been given:

"[T]he first step is to determine whether there is a possibility of jury confusion from the record or if the evidence showed either legally or factually separate incidents. Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when the independent criminal acts have occurred at different times or when a later criminal act is motivated by 'a fresh impulse.'

When jury confusion is not shown under the first step, the second step is to determine if the error in failing to give a unanimity instruction was harmless beyond a reasonable doubt with respect to all acts."

Examination of the record reveals no possibility that there was jury confusion about the possession of drug paraphernalia offense. Although there was testimony by police officers about a number of items of paraphernalia that were recovered, the prosecuting attorney singled out only a few of them during closing argument when he told the jury about the evidence that would support the possession of drug paraphernalia count. In telling the jury what evidence supported the charge of possession of drug paraphernalia with intent to use it to manufacture methamphetamine, the prosecutor said: "The coffee filter, the gloves, the lithium batteries, the tubing, the gas generator, all those things are paraphernalia to be used to manufacture methamphetamine." The State effectively elected the particular criminal act upon which it relied for conviction.

Stevens contends he was deprived of a fair trial by cumulative errors. His position is that, if there are errors that are harmless individually, they ought to be aggregated in order to determine whether their cumulative effect on his trial was so harmful as to require a new trial. On this subject, the court has stated that trial errors, when considered collectively, may require reversal of a defendant's conviction. *State v. Plaskett*, 271 Kan. 995, 1022, 27 P.3d 890 (2001). The test is whether the totality of circumstances substantially prejudiced the defendant and denied him or her a fair trial. But no prejudicial error may be found if the evidence is overwhelming against the defendant. 271 Kan. at 1022.

Stevens contends that the errors in Issues 4 and 5 constitute cumulative error. Since we have found no trial errors as to Issues 4 and 5, Stevens' argument has no merit.

Stevens finally argues that his sentence for a severity level 1 offense for the crime of attempted manufacture of methamphetamine was illegal. He challenges his sentence for the first time on appeal.

In the present case, the State does not question the court's jurisdiction to consider the sentencing issue. The arguments made

by Stevens are not very fully developed. Citing K.S.A. 22-3504(1), he asserts that his sentence is illegal. The statute provides that "[t]he court may correct an illegal sentence at any time." This issue was recently raised on appeal in *State v. Barnes*, No. 89,628, an unpublished Court of Appeals opinion filed November 7, 2003. Barnes was sentenced for aiding and abetting the manufacture of methamphetamine as a drug severity level 1 felony pursuant to K.S.A. 65-4159(a) rather than a drug severity level 3 felony pursuant to K.S.A. 65-4161(a). Like Stevens, Barnes did not raise the sentencing issue before the trial court, but on appeal asserted her sentence was "illegal." We concluded her sentence was not "illegal." Such a conclusion, however, does not deprive this court of jurisdiction because K.S.A. 21-4721(e)(3) provides: "In any appeal, the appellate court may review a claim that . . . the sentencing court erred in ranking the crime severity level of the current crime."

In addition, *State v. Bell*, 258 Kan. 123, 126-28, 899 P.2d 1000 (1995), cited by Stevens, considered whether an appellate court can consider an issue neither raised in the trial court nor raised by the parties on appeal. The court concluded that the particular issue was not properly before the appellate court in *Bell*, but noted that an appellate court does have power to consider an issue that was not raised by the parties in the trial court or on appeal "in exceptional circumstances where consideration of the new issue is necessary to serve the interests of justice or to prevent a denial of fundamental rights." 258 Kan. 123, Syl. The court quoted the following excerpt from *State v. Puckett*, 230 Kan. 596, 598-99, 640 P.2d 1198 (1982), for instances where it would be appropriate for an appellate court to consider an issue *sua sponte*, that is, exceptions to the general rule:

" '(1) Cases where the newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case;

" '(2) Questions raised for the first time on appeal if consideration of the same is necessary to serve the ends of justice or to prevent denial of fundamental rights; and

" '(3) That a judgment of a trial court may be upheld on appeal even though that court may have relied on the wrong ground or assigned a wrong reason for its decision.' " 258 Kan. at 126.

The substantive issue of the propriety of the sentence is controlled by recent opinions in *State v. Layton*, 276 Kan. 777, 80 P.3d 65 (2003), and *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004).

Stevens has two theories why his sentence for attempted manufacture of methamphetamine in violation of K.S.A. 65-4159 must be vacated. First, he contends that the penalty provision of K.S.A. 65-4127c applies to a violation of K.S.A. 65-4159. In *Layton*, the court held that "[t]he penalty provision of K.S.A. 65-4127c has no application to a violation of K.S.A. 65-4159. The only penalty provision applicable to a violation of K.S.A. 65-4159 is contained in that section." 276 Kan. 777, Syl. ¶ 2. Second, he contends that the penalty provision of K.S.A. 65-4161 applies to a violation of 65-4159 because the two sections criminalize the same conduct but 65-4161 carries a lesser penalty and is the more specific statute. In *McAdam*, the court held, in the particular facts of that case, that 65-4161(a) and 65-4159(a) are identical so that McAdam could be sentenced only under the lesser penalty provision of 65-4161(a). 277 Kan. at 145.

McAdam was convicted of conspiracy to unlawfully manufacture methamphetamine. In order to establish the crime, the State had to show that McAdam agreed with at least one other person to manufacture methamphetamine, that he entered into the agreement with the intent to manufacture methamphetamine, and that he or another party to the agreement committed an overt act in furtherance of the agreement. The State's proof of an overt act was the attempted theft of anhydrous ammonia, an ingredient of methamphetamine.

K.S.A. 65-4159(a) provides: "Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture any controlled substance or controlled substance analog." Methamphetamine is a controlled substance. K.S.A. 65-4101(e); K.S.A. 65-4107(d)(3). The penalty for violation of 65-4159(a) is a drug severity level 1 felony. K.S.A. 65-4159(b).

K.S.A. 65-4161(a) provides:

"Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to sell, offer for sale or have in such person's possession with intent to sell, deliver or distribute; prescribe; administer; deliver; distribute;

dispense or compound any opiates, opium or narcotic drugs, or any stimulant designated in subsection (d)(1), (d)(3) or (f)(1) of K.S.A. 65-4107 and amendments thereto. Except as provided in subsections (b), (c) and (d), any person who violates this subsection shall be guilty of a drug severity level 3 felony."

Methamphetamine is designated a stimulant in 65-4107(d)(3).

The elements of 65-4159(a) and 65-4161(a) are not necessarily identical. For example, the elements of a violation of 65-4161(a) · could be that the defendant sold opium. The elements were identical, however, as applied to the circumstances in *McAdam*. In the present case, as in *McAdam*, the manufacture of methamphetamine was the objective, and an overt act was committed toward that end. The elements of 65-4159(a) and 65-4161(a) are identical in the circumstances of this case. For this reason and in accord with the reasoning and result of *McAdam*, Stevens may be sentenced only under the lesser penalty provision of K.S.A. 65-4161(a).

### CROSS-APPEAL

The State cross-appeals the sentencing court's decision that Stevens' conviction for possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine should be classified as a drug severity level 4 felony rather than a drug severity level 1 felony pursuant to K.S.A. 65-7006. Since we have set aside Stevens' conviction and sentence for possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine, the State's cross-appeal is moot.

Stevens' conviction and sentence for possession of drug paraphernalia with the intent to manufacture methamphetamine is affirmed. Stevens' conviction for possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine is reversed and the sentence vacated. The sentence for attempted manufacture of methamphetamine is vacated and remanded for resentencing as a drug severity level 3 felony as provided for a violation of K.S.A. 65-4161(a).

Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court

is affirmed in part, reversed in part, and remanded for resentencing.

BEIER, J., concurring: I concur in the result and most of the reasoning of the opinion written for the court by Justice Allegrucci. I write separately only because I depart from the court's treatment of Stevens' multiple acts claim.

This is not a multiple acts case, and thus the court's discussion of multiple acts decisions is unnecessary.

In a multiple acts case, the evidence will support more than one count of the *same* crime, but the State charges only one count of the crime. See *State v. Timley,* 255 Kan. 286, 289, 875 P.2d 242 (1994). In such a situation, a defendant may, under certain circumstances, successfully argue on appeal that the jury was confused and unanimity on guilt lacking. See *State v. Hill,* 271 Kan. 929, 26 P.3d 1267 (2001).

Here, evidence of two different crimes — possession of drug paraphernalia with intent to use it in manufacturing a controlled substance, a severity level 4 felony; and possession of drug paraphernalia for introducing a controlled substance into the human body, a misdemeanor — was introduced. However, Stevens was not charged with the misdemeanor. In addition, the prosecution made clear which items supported its possession of paraphernalia felony charge. Nothing further was needed to protect Stevens' entitlement to jury unanimity.