(130 P.3d 1235)

No. 93,256

STATE OF KANSAS, *Appellee*, v. HENRY ESCALANTE, *Appellant*.

Opinion filed March 31, 2006.

*B. Joyce Yeager,* of Yeager Law Firm, L.L.C., of Overland Park, for appellant.

*Amy M. Memmer,* assistant district attorney, *Robert D. Hecht,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before PIERRON, P.J., MARQUARDT and MALONE, JJ.

PIERRON, J.: Henry Escalante appeals his conviction for attempted aggravated kidnapping and aggravated battery. Escalante argues his convictions are multiplicitous, the trial court erred in not giving a unanimity jury instruction, and that his criminal history calculation is incorrect.

Escalante and his ex-wife Nancy had been in a tumultuous relationship for 19 years. They had been married and divorced two times, and Nancy had filed for protection from abuse orders on multiple occasions. There was a protective order in place at the time of the events in this case. Nancy had ordered Escalante out of her house on September 24, 2003.

In the early morning hours of October 2, 2003, Escalante called Nancy and asked her to deliver his coveralls and coat to the hotel where he was staying. Nancy agreed and told Escalante she would deliver his clothes to the hotel during her lunch hour at work. Nancy was apprehensive and gave a note to her coworkers indicating she was going to the County Inn. She took the clothes to Escalante's hotel room, and he asked if she would like to come in and talk. Nancy told Escalante she needed to get some gasoline and return to work. When she returned to her car, Escalante got in the front seat with her. Nancy testified she was scared to death. She said she could tell he had been drinking. Escalante said he needed a ride to Food-4-Less. Nancy said she wanted to get out of the car right then, but they were in an isolated place in the parking lot behind the hotel.

As they approached the Food-4-Less, Escalante told Nancy to keep driving to the country. She looked over at him and saw he had a small kitchen or paring knife in his hand. As they approached

a K-Mart, Escalante told her to keep driving or he would stab her right there. Because there were many people around, Nancy drove into the K-Mart parking lot, stopped the car, opened the door, and tried to get out. Escalante pulled Nancy back into the car and repeatedly stabbed her in the chest, waist, neck, and arm. After she broke free, Nancy ran towards the K-Mart. A woman in a truck behind Nancy's car witnessed the entire event and was able to help cause a distraction by repeatedly honking her horn. Nancy was taken to the hospital by ambulance and was treated for minor cuts and released.

Escalante was charged with aggravated kidnapping, aggravated battery, criminal threat, and aggravated assault. On the charge of aggravated kidnapping, the jury was instructed on the lesser included offenses of attempted aggravated kidnapping and criminal restraint. The jury convicted Escalante of attempted aggravated kidnapping, aggravated battery, aggravated assault, and criminal threat.

Prior to sentencing, Escalante filed an objection to his criminal history and a motion for judgment of acquittal based on multiplicity of charges. The trial court granted an acquittal of Escalante's aggravated assault and criminal threat convictions, finding there was one continuous course of conduct and those two convictions merged into the aggravated battery in a single act of violence. The court rejected Escalante's criminal history objections and sentenced him to a controlling term of 233 months' incarceration. Escalante died during his incarceration. Under *State v. Jones*, 220 Kan. 136, 551 P.2d 801 (1976), we will consider the underlying conviction but not the sentencing issues.

First, Escalante argues his convictions for attempted aggravated kidnapping and aggravated battery are mutiplicitous and he cannot be convicted of both crimes. He contends the trial court determined there was a cohesive and continuous course of conduct and he cannot be convicted of multiple crimes for a single act of violence.

Whether charges are multiplicitous is a question of law, and an appellate court's review is unlimited. *State v. Kessler*, 276 Kan. 202, 204, 73 P.3d 761 (2003). "Multiplicity is the charging of two or

more counts in a complaint where only a single wrongful act is involved. [Citation omitted.]" *State v. Stevens*, 278 Kan. 441, 446, 101 P.3d 1190 (2004). "The test to determine whether the charges in a complaint or information are multiplicitous is whether each offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous." 278 Kan. at 447.

In *State v. Patten*, 280 Kan. 385, Syl. ¶ 4, 122 P.3d 350 (2005), the Kansas Supreme Court reiterated its reliance on a straight elements test for multiplicity: "The test of multiplicity is the strict element test without considering the facts that must be proven to establish those elements." The *Patten* court indicated this test is favorable (1) for facility of application and certainty, and (2) to avoid any possibility of returning to the difficulties of the second prong of *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988). 280 Kan. 393.

Escalante relies on *State v. Groves*, 278 Kan. 302, 95 P.3d 95 (2004), for his argument that because there was one single act of violence in the same time and place, the charges in this case are multiplicitous. The facts in *Groves* are arguably distinguishable from the present case. In *Groves*, the court held the defendant's convictions for aggravated robbery and aggravated battery were multiplicitous where the same act of violence, grabbing the victim's purse and knocking her to the ground, provided the basis for each conviction. 278 Kan. at 307-08.

To be convicted of attempted aggravated kidnapping, the defendant must perform one or more overt acts toward the commission of the crime of aggravated kidnapping, with the intent to commit an aggravated kidnapping, but fail to complete the crime of aggravated kidnapping. See K.S.A. 21-3301; K.S.A. 21-3421. To be convicted of aggravated battery, Escalante must have intentionally caused physical contact with the victim in a rude, insulting, or angry manner with a deadly weapon, or in a manner whereby great bodily harm, disfigurement, or death could have been inflicted, on the date in question. See K.S.A. 21-3414(a)(1)(C).

We do not find Escalante's case presents a situation of a "single act of violence" as was the case in *Groves* when analyzing the ques-

tion of multiplicity. The events in this case clearly consisted of a continuous incident, but the charges are not multiplicitous as a single act of violence. See *Groves*, 278 Kan. at 307; *State v. Bishop*, 240 Kan. 647, 653-54, 732 P.2d 765 (1987).

> "The test concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge. If not, the fact that both charges relate to and grow out of the same transaction does not preclude convictions and sentences for both charges. [Citation omitted.] Multiplicity does not depend upon whether the facts proved at trial are actually used to support convictions of both offenses charged; rather, it turns upon whether the elements of proof necessary to prove one crime are also necessary to prove the other. [Citation omitted.]" *State v. Vontress*, 266 Kan. 248, 256, 970 P.2d 42 (1998).

The State may not split a single offense into separate parts where there is a single wrongful act which does not furnish the basis for more than one criminal prosecution. However, where the criminal conduct of the defendant supports convictions for more than one crime, K.S.A. 2005 Supp. 21-3107 provides statutory authority for multiple convictions even though the criminal conduct of a defendant consists of a single transaction. See *State v. Mincey*, 265 Kan. 257, 262, 963 P.2d 403 (1998).

Considering the elements set forth in attempted aggravated kidnapping and aggravated battery, it appears that aggravated battery does not constitute a lesser degree, attempt, or attempt to commit a lesser degree of attempted aggravated kidnapping. Therefore, the convictions for both counts are not necessarily multiplicitous as each charge required proof of an element not required in proving the other, notwithstanding the fact that there was a continuous event.

Due to the elements of aggravated kidnapping as charged here, had that crime been successfully completed, the aggravated battery would have merged with the aggravated kidnapping. However, here there was only an attempt, which did not require a completed aggravated battery, so the two crimes are not merged.

Next, Escalante argues the trial court erred in not giving a unanimity jury instruction. We disagree.

Escalante did not raise his unanimity instruction argument during trial. Escalante raised the issue in his motion for judgment of acquittal notwithstanding the verdict or, in the alternative, for new trial. He argued that because the State kept the basis of the charges vague and did not separate out which act formed which charge, the jury was left to guess in trying to figure out if the verdict was unanimous. The trial court denied the motion at sentencing.

Having failed to request the jury instruction at trial, our standard of review is based on clear error. " 'It is well established that [an appellate] court reviews a trial court's failure to give an instruction by a clearly erroneous standard where the party *neither requested the instruction nor objected to its omission.*' [Citation omitted.]" *State v. Pabst,* 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred.' [Citation omitted.]" *State v. Shirley,* 277 Kan. 659, 666, 89 P.3d 649 (2004).

In a multiple acts case, several acts are alleged and any one of the acts could constitute the crime charged. In such a case, the jury must be unanimous as to which act constitutes the crime. *State v. Davis,* 275 Kan. 107, 115, 61 P.3d 701 (2003). Therefore, to ensure jury unanimity, either the State must elect the particular act upon which it will rely for conviction or the court must instruct the jury to agree on a specific underlying criminal act. *State v. Timley,* 255 Kan. 286, 289-90, 875 P.2d 242 (1994).

In *State v. Hill,* 271 Kan. 929, Syl. ¶ 3, 26 P.3d 1267 (2001), our Supreme Court adopted a two-step analysis for determining whether a unanimity instruction is required. The first step is to determine whether there was a possibility of jury confusion from the record, or if the evidence shows either legally or factually separate incidents. A legally separate incident is when a defendant presents different defenses to a separate set of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. A factually separate incident is when independent criminal acts have occurred at different times or when a later act is motivated by a "fresh im-

pulse." If jury confusion is not shown under step one, the second step is to determine if the failure to give a unanimity instruction is harmless beyond a reasonable doubt with respect to all acts. 271 Kan. at 939.

Escalante claims that he presented separate defenses to the attempted aggravated kidnapping, namely that the cuts were minor and Nancy was not confined when they got in the car and left the hotel, and to the aggravated battery, namely that no knife was ever found and Nancy was not a credible witness. We agree with the State that Escalante's claims of multiple defenses are without merit and obviously amount to the same defense, namely that he did not kidnap Nancy and he did not cut her badly with the knife.

As previously discussed in relation to the multiplicity argument, the events in this case involved a relatively short, continuous, single incident comprised of several overt acts individually sufficient for conviction of attempted aggravated kidnapping as well as aggravated battery. Consequently, jury unanimity requires only that the jury agree to the act of the crime charged, not which particular act. See *State v. Staggs*, 27 Kan. App. 2d 865, Syl. ¶ 2, 9 P.3d 601 (2000).

We do not consider this case a "multiple acts" case, and we are convinced that there was no possibility of jury confusion. There was certainly no clear error in not giving the unanimity instruction. Moreover, any such purported error was harmless beyond a reasonable doubt with respect to all acts. See *Hill*, 271 Kan. at 939-40. Specifically, it was made clear what overt acts were charged and which supporting evidence that the State was relying upon in establishing each charge, and Escalante did not present separate defenses to any of the overt acts outlined by the prosecution.

Last, Escalante argues the trial court erred in overruling his objection to his criminal history by including in his history a crime that had been enhanced and also the crimes used to enhance that crime to the felony level. His appellate brief requests a remand for resentencing.

"Although many other courts have held the death of a defendant during the pendency of his appeal from a criminal conviction abates the appeal, in Kansas the death of a defendant does not abate his direct appeal as it is in the interest of

the public that the issues raised on appeal be adjudicated upon the merits. *State v. Jones*, 220 Kan. 136, 137, 551 P.2d 801 (1976). While death moots the sentence and renders impossible a new trial, [a defendant's] appeal as to the admitted redacted statement should be reviewed and decided." *State v. Burnison*, 247 Kan. 19, 32, 795 P.2d 32 (1990).

We hold all issues regarding computation of Escalante's sentence are rendered moot as a result of his death, as any resentencing is academic.

Affirmed.

MALONE, J., concurring and dissenting: I concur with the majority in all respects except for its conclusion that Henry Escalante's conviction of aggravated battery did not merge with the conviction of attempted aggravated kidnapping. The majority concludes that had the "crime [of aggravated kidnapping] been successfully completed, the aggravated battery would have been merged with the aggravated kidnapping." However, because Escalante was only convicted of attempted aggravated kidnapping, the majority concludes there was no merger. I fail to follow this reasoning and conclude instead that the two convictions arise from a single act of violence and are therefore multiplicitous.

Escalante attempted to force his ex-wife Nancy to drive to the country against her will. When she tried to get away, he repeatedly stabbed her in the chest, waist, neck, and arm. For these acts, Escalante was charged with aggravated battery and also with aggravated kidnapping. The jury found him guilty of aggravated battery as charged. The jury also found Escalante guilty of attempted aggravated kidnapping as a lesser included offense of aggravated kidnapping, presumably because he did not succeed in getting Nancy to drive to the country. Escalante received a separate sentence for each conviction. The issue is whether under these facts the conviction of aggravated battery merged into the conviction of attempted aggravated kidnapping so as to make the separate convictions multiplicitous.

Multiplicity exists where the State attempts to use a single wrongful act as the basis for multiple charges and is based on the doctrine of merger. *State v. Garcia*, 272 Kan. 140, 143, 32 P.3d

188 (2001). Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *State v. Vontress,* 266 Kan. 248, 255, 970 P.2d 42 (1998).

The Kansas Supreme Court has candidly noted that the issue of multiplicity "has been a highly confusing subject in Kansas law, and our prior cases have not always been clear." *Garcia,* 272 Kan. at 142. Kansas appellate courts have struggled in many cases to develop a "test" for determining multiplicity. While recent decisions have relied upon a strict "elements test" as the method of determining multiplicity, Kansas has also long recognized the merger of crimes when they arise from a "single act of violence." The following summary of cases demonstrates the alternative approaches Kansas courts have followed in resolving multiplicity issues.

In *State v. Garnes,* 229 Kan. 368, 624 P.2d 448 (1981), the defendant shot the victim at a nightclub causing only a superficial wound. The defendant and the victim then drove out to the country where the defendant attempted to kill the victim by stabbing her and running over her with the car. The defendant was charged with one count of attempted murder and two counts of aggravated battery, one count for the shooting incident at the nightclub and one count for the stabbing incident in the country. The defendant was convicted as charged and on appeal argued that the aggravated battery convictions were multiplicitous with the attempted murder conviction.

The court noted that a single wrongful act may not furnish the basis for more than one criminal prosecution. The court then determined that if each offense charged required proof of a fact not required in proving the other, the offenses do not merge and the charges are not multiplicitous. This is known as the "elements test." However, the court also determined that where offenses are committed separately at different times and places, they cannot be said to arise out of a single wrongful act. 229 Kan. at 373. Under the

facts of the case, the court held the aggravated battery count for the stabbing incident in the country was multiplicitous with the attempted murder. However, the aggravated battery count for the shooting at the nightclub was not multiplicitous with the attempted murder because the offenses occurred at different times and places. 229 Kan. at 373-74.

In *State v. Warren*, 252 Kan. 169, 843 P.2d 224 (1992), two women knocked an elderly woman to the ground and forcibly took her purse. The victim spent almost 3 months in the hospital recovering from a dislocated shoulder, a broken kneecap, broken teeth, and facial abrasions. The defendant served as the getaway driver for the two women and was convicted of aggravated battery and aggravated robbery as an aider and abettor. On appeal, he claimed the convictions were multiplicitous.

The court recognized the elements test to determine multiplicity which was enunciated in *Garnes*. The court further noted that the offenses of aggravated battery and aggravated robbery each required proof of a fact not required in proving the other. Nevertheless, the court stated:

"If the charges in this case are not multiplicitous because one charge involves proof of a fact not required in proving the other, then it leads to the conclusion that only crimes involving identical elements can be multiplicitous. *This cannot be the case because this court has found crimes involving different elements multiplicitous.* [Citations omitted.]" (Emphasis added.) 252 Kan. at 182.

The court concluded: "We are satisfied, and so hold, that aggravated robbery and aggravated battery are multiplicitous if, as in the case here, *the same act of violence provided the basis for each conviction.* The defendant's conviction for aiding and abetting aggravated battery is reversed and the sentence therefor vacated." (Emphasis added.) 252 Kan. 182.

*Warren* was followed by *Vontress*, where the defendant shot the victim in the course of a robbery and was convicted of separate counts of aggravated robbery and aggravated battery. On appeal, the court stated: "The test concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge." 266 Kan. at 256. In arguing that the convictions were not multiplicitous, the State

pointed out that aggravated battery required proof of elements not necessary to prove aggravated robbery, and vice versa. Thus, according to the State, the convictions were not multiplicitous under the elements test. The court rejected this argument and stated:

"The State fails to acknowledge that the sole allegation of bodily harm in its complaint and the judge's instructions to the jury was Spires' [the victim] gunshot wounds. To prove the bodily harm element of aggravated robbery, the State was required to prove one fact: Vontress shot Spires—the same fact necessary for proof of the great bodily harm element of aggravated battery. Under the information and instructions in this case, the aggravated battery count required proof of the fact which was also required to prove the aggravated robbery charge. Therefore, the convictions are multiplicitous, and the punishment for both crimes is a violation of double jeopardy. The aggravated battery conviction is reversed." 266 Kan. at 257.

The next significant case is *Garcia*, where the defendant sexually assaulted the victim, taping her hands and feet in the process. He was convicted of aggravated kidnapping, two counts of rape, and one count of aggravated criminal sodomy. The State relied upon one of the rapes or the aggravated criminal sodomy in order to establish the bodily harm element of aggravated kidnapping.

On appeal, the court held crimes are multiplicitous where: (1) the crimes merge, that is, they constitute a single wrongful act, and the same evidence is required to prove both crimes; but if each offense requires proof of a fact not required in proving the other, the offenses do not merge; and (2) one offense is an included offense of the other as provided under K.S.A. 21-3107. *Garcia,* 272 Kan. 140, Syl. ¶ 3. The court determined that the crimes were not multiplicitous under the common-law elements test because both rape charges and the aggravated criminal sodomy charge required an element not found in the aggravated kidnapping charge. 272 Kan. at 144. However, the court concluded that under the alternative test for multiplicity, the defendant's conviction for aggravated kidnapping was multiplicitous with either the rape or aggravated criminal sodomy convictions because "the bodily harm needed to prove aggravated kidnapping was the same bodily harm supplied by one of the rape convictions or the aggravated criminal sodomy conviction." 272 Kan. at 147. However, the *Garcia* court

pointed out a change in the multiplicity analysis as a result of the 1998 revision of K.S.A. 21-3107:

"It should be noted that in 1998, the Kansas Legislature amended K.S.A. 21-3107 to essentially remove the former K.S.A. 21-3107(2)(d). See L. 1998, ch. 185, § 1. In its place, the legislature inserted a new version, K.S.A. 2000 Supp. 21-3107(2)(b), which provides that an included crime is one where 'all of the elements of the lesser crime are identical to some of the elements of the crime charged.' *This will necessarily change the multiplicity analysis for cases which occur under the new statute and signifies a return to the identity of the elements standard that this court used prior to the enactment of K.S.A. 21-3107.* Such a change, while allowing convictions for crimes which would have been multiplicitous under the statute at issue here, does not violate constitutional prohibitions against double jeopardy as it does not subject defendants to punishments greater than those intended by the legislature. [Citation omitted.]" (Emphasis added.) 272 Kan. at 147.

The applicable law regarding multiplicity was seemingly clarified in *State v. Schuette*, 273 Kan. 593, 44 P.3d 459 (2002), where the court held the defendant's convictions of criminal threat and harassment by telephone were not multiplicitous. There, the court, after quoting extensively from *Garcia*, stated: "The present statutory language in essence mirrors the common-law elements test, *thereby leaving it as the only remaining test for multiplicity*." (Emphasis added.) 273 Kan. at 601.

However, in *State v. Groves*, 278 Kan. 302, 95 P.3d 95 (2004), a case with facts similar to *Warren*, the court once again departed from the elements test to determine multiplicity. The victim had been thrown to the ground while the defendant attempted to grab her purse, and the defendant was convicted of aggravated battery and aggravated robbery. The conviction for aggravated battery was set aside by the *Groves* court under the rationale that both convictions were the result of a single act of violence. 278 Kan. at 307-08. In doing so, the court declared: "The single act of violence paradigm concerning multiplicity is unaffected by the lesser included analysis under K.S.A. 21-3107 before or after the 1998 amendment." 278 Kan. at 305.

The application of the multiplicity doctrine becomes even more complex in drug cases. In *State v. Stevens*, 278 Kan. 441, 447, 101 P.3d 1190 (2004), the court stated: "The test to determine whether

the charges in a complaint or information are multiplicitous is whether each offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous." However, the court looked to the facts that must be proven to establish those elements when applying the test. Under the facts of the case, the court held the offenses of possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine and attempted manufacture of methamphetamine were multiplicitous. 278 Kan. at 448. However, the court also held the offenses of attempted manufacture of methamphetamine and possession of drug paraphernalia were not multiplicitous. 278 Kan. at 450.

Finally, in *State v. Patten*, 280 Kan. 385, 122 P.3d 350 (2005), the court held the defendant's convictions of manufacture of methamphetamine and possession of drug paraphernalia with intent to manufacture methamphetamine were not multiplicitous. The court reiterated its reliance on the elements test for determining multiplicity but rejected the "common-law" elements test in *Stevens*, which allowed the court to consider the facts. 280 Kan. at 389-93. Instead, the court held "the test of multiplicity is the strict elements test without considering the facts that must be proven to establish those elements." 280 Kan. 385, Syl. ¶ 4. The court concluded:

"What most recommends the strict elements analysis is its logical, mechanical ease of application and hence, certainty. Consideration of the facts proved, in contrast, puts multiplicity on a case-by-case basis. We therefore adopt use of the strict elements analysis to determine multiplicity for several reasons: (1) for facility of application and certainty, and (2) to avoid any possibility of returning to the difficulties of the second prong of the *Fike* test." 280 Kan. at 393.

This summary of Kansas decisions seemingly demonstrates a movement toward adopting a strict elements test as the only method of determining multiplicity of criminal charges. However, not all prior Kansas decisions have relied on the elements test to determine multiplicity and some decisions even questioned the usefulness of that test. *Warren*, *Vontress*, and *Groves* have not been overruled. These decisions were driven by the facts and in each case the court concluded that separate offenses were multiplicitous when the defendant's same wrongful act provided the

basis for each offense, even though different elements were necessary to prove each charge.

One reason for the confusion may be that Kansas appellate courts have traditionally addressed the issue of multiplicity interchangeably with the issue of lesser included offenses, focusing on the statutory language of K.S.A. 21-3107. This confusion was noted by the court in *Warren.* 252 Kan. at 175. In the process, courts have consistently attempted to apply an elements test to determine multiplicity when such a test is actually more appropriate to determine the issue of lesser included offenses.

K.S.A. 2005 Supp. 21-3107 deals with multiple prosecutions and lesser included crimes. Section (1) of this statute provides:

"When the same *conduct* of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment." (Emphasis added.)

Simply put, when the criminal *conduct* of a defendant establishes the commission of more than one crime, K.S.A. 21-3107(1) provides statutory authority for multiple prosecutions for the separate crimes. However, the State "may not split a single offense into separate parts where there is a single wrongful *act* which does not furnish the basis for more than one criminal prosecution." (Emphasis added.) *State v. Mincey,* 265 Kan. 257, 262, 963 P.2d 403 (1998).

K.S.A. 2005 Supp. 21-3107(2) deals with lesser included offenses and provides a statutory test to define an "included crime." Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. Prior to 1998, this statutory definition included the language "a crime necessarily proved if the crime charged were proved." See L. 1998, ch. 185, sec. 1. Based upon this language, Kansas appellate courts adopted a two-pronged analysis to determine lesser included offenses:

"The first step is to determine whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. If so, the lesser crime is a lesser included crime of the crime charged. Under the second prong of the test, even if the statutory elements of

the lesser crime are not all included in the statutory elements of the crime charged, the lesser crime may still be a lesser included crime . . . if the factual allegations of the charging document and the evidence required to be adduced at trial in order to prove the crime charged would also necessarily prove the lesser crime." *State v. Fike*, 243 Kan. 365, Syl. ¶ 1, 757 P.2d 724 (1988).

In 1998, K.S.A. 21-3107 was amended to delete the language about a crime necessarily proved if the crime charged was proved. This eliminated the second prong of the *Fike* analysis from the process of determining lesser included offenses. Under the current version of 21-3107(2), a lesser included crime includes a lesser degree of the same crime, an attempt, or "a crime where all the elements of the lesser crime are identical to some of the elements of the crime charged." Thus, the elements test is now the only applicable test to determine whether an offense constitutes a lesser included crime of the crime charged. *State v. Saiz*, 269 Kan. 657, 661-63, 7 P.3d 1214 (2000).

However, this same strict elements test does not always lend itself to the determination of multiplicity. Whether two separate offenses are multiplicitous must be determined by the circumstances of each case. The facts matter and must be considered. If a single wrongful act by the defendant provides the basis for more than one charge, then the offenses are multiplicitous and the defendant must not receive multiple punishments for the same act.

Returning to the facts of this case, Escalante's case is identical to *Vontress* except here we are dealing with aggravated battery merging with attempted aggravated kidnapping rather than aggravated battery merging with aggravated robbery. Escalante was charged with aggravated battery by causing physical contact with Nancy with a deadly weapon, to wit: a knife. He was also charged with aggravated kidnapping, rather than simple kidnapping, because he inflicted bodily harm on Nancy in the course of the abduction. To prove the bodily harm element of aggravated kidnapping, the State was required to prove one fact: Escalante stabbed Nancy—the same fact necessary to prove the aggravated battery charge. In the closing argument, the State argued that the stabbing incident was the basis for both the aggravated battery and the aggravated kidnapping. Under the information and instructions in

this case, the aggravated battery count required proof of the same fact necessary to support the aggravated kidnapping charge. Based upon the rationale of *Vontress*, the aggravated battery charge and the aggravated kidnapping charge were multiplicitous.

Escalante was only convicted of the lesser included offense of attempted aggravated kidnapping, but this does not change the analysis. To find Escalante guilty of aggravated battery, the jury must have found that he stabbed Nancy with a knife. To find Escalante guilty of attempted aggravated kidnapping, the jury must have found that Escalante inflicted bodily harm on Nancy in the course of a kidnapping, but that he failed to complete the commission of the crime of kidnapping. The only evidence of bodily harm inflicted upon Nancy was the stabbing incident, and this was the State's theory of the case. Thus, even though Escalante was only convicted of attempted aggravated kidnapping, the same stabbing incident provided the basis for that conviction as well as the aggravated battery conviction.

As in all cases, the State had discretion concerning the charges to be filed against Escalante. The State could have charged Escalante with separate counts of simple kidnapping and aggravated battery and in such a case there would have been no multiplicity problems. However, when the State chose to charge Escalante with aggravated kidnapping based upon the infliction of bodily harm upon Nancy, the aggravated battery charge merged into the aggravated kidnapping charge. Escalante's convictions on both counts were multiplicitous.

As it stands, Escalante has been punished twice for his act of stabbing Nancy. He was punished by the sentence he received for the aggravated battery conviction. He was also punished by the enhanced sentence he received for attempted aggravated kidnapping as opposed to the sentence he could have received for attempted simple kidnapping. The fact that the trial court chose to run the sentences concurrently does not change the result that Escalante has received multiple punishments for the same act. This is precisely what the doctrine of multiplicity is designed to prevent.

The majority is correct in noting that the elements of attempted aggravated kidnapping are different from the elements of aggra-

vated battery. Under the strict elements test enunciated in *Patten*, aggravated battery and attempted aggravated kidnapping cannot possibly be multiplicitous crimes. However, the present case can be distinguished from *Patten*, a drug case which did not address the single act of violence rule of multiplicity. The holding of *Patten* should be limited to its facts and does not undermine the many prior decisions recognizing the merger of crimes when they arise from a single act of violence by the defendant.

Under the facts of this case, Escalante's convictions of aggravated battery and attempted aggravated kidnapping were multiplicitous. If a jury returns guilty verdicts to multiplicitous charges, the trial court must accept only the verdict as to the greater charge under the doctrine of merger. *State v. Dixon*, 252 Kan. 39, 49, 843 P.2d 182 (1992). Accordingly, Escalante's conviction of aggravated battery should be set aside.