(99 P.3d 138)
No. 90,183

STATE OF KANSAS, *Appellee*, v. DALE E. CAPPS, *Appellant*.

Opinion filed May 14, 2004.

*Richard Ney*, of Ney, Adams & Sylvester, of Wichita, for appellant.

*James R. Watts*, assistant county attorney, and *Phill Kline*, attorney general, for appellee.

Before JOHNSON, P.J., GREEN, J., and ROBERT J. FLEMING, District Judge, assigned.

JOHNSON, J.: Dale E. Capps appeals his convictions for attempted manufacture of methamphetamine, possession of methamphetamine, possession of drug paraphernalia with intent to manufacture, illegal possession of ephedrine/pseudoephedrine, and failure to affix a drug tax stamp. Finding insufficient evidence to support a drug tax stamp violation, we reverse that conviction. Finding multiple errors, including a clearly erroneous instruction on attempt and an erroneous admission of prior crime evidence, we reverse the remaining convictions and remand for a new trial.

The case began with a traffic stop of a vehicle with illegal window tinting. Larry Capps was the vehicle driver; Dale Capps, Larry's uncle, was in the front passenger seat. While issuing a warning ticket for the traffic violation, the officer observed that Larry appeared nervous. The officer asked for and obtained permission to search the car.

On the floorboard in the front seat area was a black bag containing a camouflage mask, rubber gloves, a funnel, a metal oxygen cylinder, and two hoses. A pen tube and foil with white powder were found under the driver's seat. In the back seat were found a funnel with white powder residue, night-vision equipment, and a toolbox containing coffee filters with powder residue and foil with burnt residue. When the officers opened the trunk, they observed a white vapor and detected a strong ammonia odor. Inside the trunk were a propane tank with corroded fittings, a gassing generator fashioned from a soda bottle, a bottle of drain cleaner, a partially emptied bottle of muriatic acid, a roll of aluminum foil, and two thermoses. One thermos contained a paste-like substance; the other contained a more liquified material. Both substances tested positive for the presence of methamphetamine.

Both Larry and Dale were charged with multiple drug-related offenses. Dale's motion to consolidate the trials was denied based on the court's finding of antagonistic defenses. Larry was convicted of some of the charges but acquitted on the manufacturing charge. His convictions were affirmed on appeal. *State v. Capps*, No. 89,374, unpublished opinion filed August 29, 2003.

Dale raises the following issues: (1) the attempted manufacture of methamphetamine elements jury instruction was clearly erroneous; (2) the trial court failed to give an instruction on accomplice testimony; (3) the trial court erroneously admitted evidence of a prior methamphetamine possession conviction; (4) the State violated Dale's right to due process by presenting Larry's false and inconsistent testimony; (5) the evidence was insufficient to support the drug tax stamp conviction; and (6) the charges for possessing anhydrous ammonia, ephedrine, and drug paraphernalia are multiplicitous with the attempted manufacturing conviction.

## *ELEMENTS INSTRUCTION ON ATTEMPTED MANUFACTURING*

Dale complains that the trial court's instruction on attempted manufacturing did not include the elements of attempt. Dale objected to the giving of any attempted manufacturing instruction, although he did not specify an objection to the wording of the instruction which was given. Arguably, a clearly erroneous standard of review applies. See K.S.A. 2003 Supp. 22-3414(3). However, the trial court has a duty to define the offense charged, stating the essential elements of the crime. *State v. Houck*, 240 Kan. 130, 138, 727 P.2d 460 (1986). A jury instruction that omits an essential element of the crime is clearly erroneous. *State v. Crawford*, 247 Kan. 223, 228, 795 P.2d 401 (1990).

In *State v. Martens*, 274 Kan. 459, 465, 54 P.3d 960 (2002), our Supreme Court discussed the distinction between manufacturing and an attempt to manufacture, pointing out that manufacturing is controlled by K.S.A. 65-4159, while attempted manufacturing is controlled by K.S.A. 21-3301. To convict of attempted manufacturing, "the State must show that the defendant: (1) performed an overt act toward the commission of a certain crime; (2) did so with

the intent to commit the crime; and (3) failed to perpetrate the crime or was prevented or intercepted in the execution of the crime." 274 Kan. at 466. The three elements of attempt are essential. *State v. Wilson*, 30 Kan. App. 2d 498, 499-500, 43 P.3d 851, *rev. denied* 274 Kan. 1118 (2002).

Here, the trial court simply used PIK Crim. 3d 67.21, the instruction for manufacture of methamphetamine, and added the word "attempted" to the first element. That effort was woefully inadequate and clearly erroneous. The jury especially needed that part of the attempt instruction, PIK Crim. 3d 55.01, which defines "overt act" to be something more than "mere preparation." Dale's conviction for attempted manufacture of methamphetamine is reversed and remanded for a new trial.

## ACCOMPLICE TESTIMONY INSTRUCTION

Capps asserts that the trial court's failure to give, *sua sponte*, the accomplice witness instruction found in PIK Crim. 3d 52.18 constituted clear error. "Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. [Citation omitted.]" *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001).

"The failure to give an accomplice instruction is not reversible error if the defendant's guilt is plain, [citation omitted], or if the judge provided another instruction which cautioned the jury about the weight to be accorded testimonial evidence." *State v. Crume*, 271 Kan. 87, 94-95, 22 P.3d 1057 (2001). Here, the jury was instructed: "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

Even the prosecutor, who proffered the accomplice testimony of Larry Capps, advised the jury that it could not believe everything that Larry Capps had said. A separate instruction was unnecessary to inform the jury that it should consider the accomplice testimony with caution. The instruction would not have changed the outcome.

## EVIDENCE OF PRIOR CONVICTION

The trial court permitted the State to introduce a journal entry of Dale Capps' 3-year-old conviction for possession of methamphetamine for the limited purpose of proving Capps' intent. Capps essentially argues that the prior crime evidence was not relevant. We agree.

K.S.A. 60-455 makes evidence that Capps committed a specific prior crime inadmissible to prove that Capps was disposed to criminal activity so as to provide an inference that Capps committed the currently charged crimes. An exception would lie if the prior crime evidence is relevant to prove some other material fact, such as intent.

"Three requirements must be satisfied to admit evidence under K.S.A. 60-455. First, the evidence is relevant to prove one of the facts specified in the statute. Second, the fact is a disputed, material fact. Third, the probative value of the evidence outweighs its potential prejudice. If these requirements are met, the scope of appellate review is limited to whether the trial court abused its discretion. [Citation omitted.]" *State v. Boorigie*, 273 Kan. 18, 34, 41 P.3d 764 (2002).

The trial court opined that because Dale and Larry were pointing fingers at each other and declaring their respective innocence, "intent is squarely at issue." On appeal, the State focuses on the definition of possession, which is having control over a place or thing with knowledge of and the *intent* to have such control. See *State v. Graham*, 244 Kan. 194, 196, 768 P.2d 259 (1989). The State's apparent argument is that, because it had to prove Dale intended to control the contraband, his intent was a disputed, material fact.

Before the jury could get to the question of whether Dale had the requisite intent to control the contraband, it had to find that Dale knew the items were in the car. Dale denied having "knowledge of" the contraband; he professed that he entered Larry's vehicle to take an innocent trip without knowing what was in the vehicle. Thus, although intent was a material fact, it was not a *disputed* fact.

More importantly, the 1999 conviction for methamphetamine possession was not relevant to intent in this case. The fact that

Dale possessed methamphetamine, as a final product, some years earlier did not make it more probable than not that he intended to exercise control over contraband intended to be used to manufacture methamphetamine. The only relevancy of the prior crime was to prove the impermissible criminal disposition inference. As such, the probative value of the evidence, being nil, was outweighed by its potential prejudice. Therefore, the State did not meet any of the requirements for admitting the prior crime evidence, and the court erred in permitting the introduction of the journal entry.

Given the nature of the evidence, we cannot declare that the evidence of Dale's prior conviction did not adversely influence the jury's verdict. We reverse and remand for a new trial.

## PROSECUTORIAL MISCONDUCT

Dale complains that the State employed irreconcilable theories in the separate trials of Larry and Dale, which resulted in the introduction of knowingly false testimony in Dale's trial. Specifically, Dale asserts that the State, having argued in Larry's trial that Larry committed the crime, should not have been permitted to use Larry as a State's witness to testify that Dale did it. The State counters that its theory was that both Larry and Dale committed the crimes in concert.

The record supports the State's contention. During the State's opening statement at Dale's trial, the prosecutor said: "You will hear from that driver. He is the defendant's nephew. Larry Capps, the driver of that car, is not an angel. Is he involved in the manufacture of these methamphetamines? Yes, a jury said he was. But he's not alone. He's not alone." At Larry's trial, the prosecutor stated: "It's not Larry or Dale; it's Larry and Dale." The State was permitted to use Larry to establish Dale's involvement in the criminal enterprise; each State's witness need not corroborate the entire theory of prosecution.

We are concerned, however, about the State's closing arguments in support of Larry's credibility. Specifically, the State argued that double jeopardy would permit Larry to testify that Larry was solely responsible for the crimes and that "no one has threatened him

with a thing." This argument strikes us as misleading, at best. The State used its subpoena power to get Larry on the stand and retained the implicit threat of a perjury charge if his testimony differed from that in his own trial. Double jeopardy would not have saved Larry from a perjury charge.

However, for prosecutorial misconduct to be reversible, the alleged error must have denied the defendant his right to a fair trial. *State v. Davis*, 275 Kan. 107, 121-22, 61 P.3d 701 (2003). The State followed up its statements in support of Larry's credibility by telling the jury that it could not believe everything that Larry said. In that context, any error in bolstering Larry's credibility was harmless.

## SUFFICIENCY OF THE DRUG TAX STAMP EVIDENCE

Dale maintains that his drug tax stamp conviction was not supported by sufficient evidence that he possessed more than a gram of a controlled substance, which is a required element of the crime. To the extent the issue is sufficiency of the evidence, our review standard is that set forth in *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003). To the extent we must interpret statutes, our review is unlimited. *State v. Maass*, 275 Kan. 328, Syl. ¶ 1, 64 P.3d 382 (2003).

Dale was convicted of possessing methamphetamine without having affixed a stamp evidencing the payment of the tax imposed under K.S.A. 79-5202. The prohibition against possessing controlled substances without a tax stamp is imposed upon dealers. K.S.A. 79-5204(a). As applicable to Dale's case, a dealer is defined as a person who possesses "more than one gram of any controlled substance." K.S.A. 79-5201(c). Therefore, the State had to prove that Dale possessed more than one gram of methamphetamine to support the drug tax stamp conviction.

The State relies on the total weight of the substances found in the two thermos containers. The Kansas Bureau of Investigation laboratory report indicated the presence of methamphetamine, ephedrine/pseudoephedrine, and lithium in the substances; the report did *not* indicate the amount of methamphetamine. However, the State contends that it is permitted to use the total weight of all materials because K.S.A. 79-5202(b) provides that in calculating

the tax, the weight of the controlled substance "includes all material, mixture or preparation that is added to the . . . controlled substance." We disagree.

The substances in the thermos containers were apparently either a by-product of or the results of an unfinished stage of the methamphetamine manufacturing process. No material was added to the controlled substance. Rather, the substances, other than the methamphetamine, had been extracted or separated during the manufacturing process. The drug tax stamp provisions are specifically applicable to the possession of controlled substances by dealers, not to the possession of partially manufactured controlled substances or the by-products of the process by manufacturers.

The evidence of the total weight of the paste-like and liquid substances in the thermos containers was insufficient to prove that Dale met the definition of a controlled substance dealer. The drug tax stamp conviction is reversed.

## *MULTIPLICITY*

Finally, Dale argues that his convictions for possessing anhydrous ammonia, drug paraphernalia, and ephedrine are multiplicitous with his conviction for attempted manufacturing of methamphetamine. He presents a question of law subject to unlimited review. See *State v. Robbins*, 272 Kan. 158, 171, 32 P.3d 171 (2001).

Capps argues that the State's theory of prosecution on the attempted manufacture of methamphetamine charge was that his possession of the anhydrous ammonia, paraphernalia, and ephedrine was the overt act performed toward the intended crime of manufacturing. Therefore, the same act provided the basis for the possession charges and for the attempted manufacturing charge.

"Upon general principles a single offense cannot be split into separate parts, and the supposed offender be prosecuted for each of such separate parts, although each part may of itself constitute a separate offense." *State v. Colgate*, 31 Kan. 511, 515, 3 Pac. 346 (1884). If one were to apply that rule logically, one would conclude that it is impermissible to split manufacturing methamphetamine into the necessary component parts of possessing ephedrine with

intent to manufacture methamphetamine, possessing paraphernalia with intent to use it for manufacturing methamphetamine, etc. Further, if possessing the components necessary to make methamphetamine is used to establish the overt act for attempted methamphetamine manufacturing, then all of the elements of the possession charges are necessarily contained in some of the elements of manufacturing, specifically the overt act element. That would make the possession charges lesser included offenses. See K.S.A. 2003 Supp. 21-3107(2)(b).

The appellate courts have settled upon a multiplicity test that determines "whether each offense charged requires proof of a fact not required in proving the other." *State v. Garcia*, 272 Kan. 140, 143, 32 P.3d 188 (2001). If the State uses the possession charges as the overt act element of attempted manufacturing, the facts necessary to prove both the possession and the attempted manufacturing crimes are the same. Those common facts would be that Capps possessed the ingredient or equipment with the intent to manufacture methamphetamine. Upon remand, unless the State asserts an overt act other than possessing the anhydrous ammonia, ephedrine, and paraphernalia, those possession convictions would be multiplicitous with the conviction for attempted manufacturing of methamphetamine.

The drug tax stamp conviction is reversed. The remaining convictions are reversed and remanded for a new trial.