NOT DESIGNATED FOR PUBLICATION

Nos. 117,808
117,809
117,810

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESSE A. JONES,
*Appellant*.

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed September 28, 2018. Affirmed in part, sentence vacated, and case remanded with directions.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN and HILL, JJ.

PER CURIAM: This appeal by Jesse A. Jones argues that the district court imposed an illegal sentence by misclassifying his 2009 Missouri conviction for attempted first-degree robbery as a person crime. To decide that issue, we must apply not only a recent Kansas Supreme Court case, but also a recent amendment to the statute defining "illegal sentence." We agree with Jones that his Missouri conviction must be classified as a non-person crime in Kansas, so he must be resentenced. Jones also argues, unsuccessfully, that the district court abused its discretion in revoking his probation.

1

*Factual and Procedural Background*

In March 2016, Jones entered guilty pleas in Kansas in three cases. Jones pleaded guilty in 15 CR 685 to one count of possession of methamphetamine; in 16 CR 584 to one count of possession of methamphetamine and one count of being a felon in possession of a firearm; and in 16 CR 806 to one count of methamphetamine, one count of being a felon in possession of a firearm, and one count of possession of marijuana.

At sentencing, the district court determined Jones had a criminal history score of C based in part on his prior person felony conviction in 2009 for attempted first-degree robbery in Missouri in violation of Mo. Rev. Stat. § 569.020 (2000) and Mo. Rev. Stat. § 564.011 (2000). Jones acknowledged that his criminal history was correct. Consistent with the plea agreement, the district court granted a dispositional departure to 12 months' probation with underlying sentences of 30 months' imprisonment in 16 CR 685, 38 months' imprisonment in 16 CR 584, and 38 months' imprisonment in 16 CR 806, to run consecutively.

Three months later, Jones was arrested for possession of methamphetamine and felony possession of a firearm. Jones pleaded guilty to both counts. The district court again assigned Jones a criminal history score of C. Although both parties recommended a dispositional departure to probation for the new charges and recommended Jones continue his probation in the previous cases, the district court revoked Jones' probation and imposed his underlying sentences. Jones appeals, challenging the legality of his sentences and the revocation of his probation.

*Did the District Court Err in Classifying Jones' Missouri Attempted First-degree Robbery as a Person Crime?*

Jones first claims that his sentence is illegal because the district court misclassified his 2009 Missouri conviction for attempted first-degree robbery as a person crime. He argues that the district court should have categorized this as a nonperson crime for three reasons: (1) K.S.A. 2017 Supp. 21-6811 does not provide for the classification of out-of-state inchoate crimes, requiring they be classified as nonperson; (2) Missouri's crime of attempt is not comparable to Kansas' crime of attempt under K.S.A. 2017 Supp. 21-5301; and (3) Missouri's crime of robbery is comparable to Kansas' theft by threat, a nonperson crime.

A court may correct an illegal sentence at any time. K.S.A. 2017 Supp. 22-3504(1). So Jones can challenge the classification of his prior conviction for purposes of lowering his criminal history score even though he raises this issue for the first time on appeal. See *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015); K.S.A. 2017 Supp. 21-6820(e)(3).

Our resolution of this claim involves the interpretation of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2017 Supp. 21-6801 et seq., a matter of law over which we have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). So whether the district court properly classified Jones' prior conviction as a person or nonperson crime for criminal history purposes is a question of law subject to our unlimited review. See *Dickey*, 301 Kan. 1018, Syl. ¶ 5.

*We generally analyze out-of-state convictions by using two steps.*

To classify an out-of-state conviction for criminal history purposes, we generally follow two steps. First, we categorize the prior conviction as a misdemeanor or a felony.

To do that, we defer to the convicting jurisdiction's classification of the crime. K.S.A. 2017 Supp. 21-6811(e). The parties do not dispute that Jones' Missouri conviction was for a felony. See Mo. Rev. Stat. § 569.020.

Second, we must determine whether the prior conviction is a person or nonperson crime. To do that, we look at the comparable crime in Kansas when the defendant committed the current crime of conviction. K.S.A. 2017 Supp. 21-6811(e)(3). If Kansas has no comparable crime, we classify the out-of-state crime as a nonperson crime. K.S.A. 2017 Supp. 21-6811(e)(3). If Kansas has a comparable crime, we see whether that crime is a person or nonperson crime and then classify the out-of-state crime that same way. Jones claims that his Missouri conviction for attempted first-degree robbery was not comparable to a person crime in Kansas, so his prior Missouri conviction was improperly classified as a person crime.

A. *Do we apply the same analysis to out-of-state anticipatory crimes?*

Jones claims that all out-of-state anticipatory crimes, namely, attempt, conspiracy, and solicitation, must be classified as nonperson crimes. He reasons that the KSGA does not explicitly provide a rubric for treating out-of-state convictions of these crimes, so the court should apply the rule of lenity to this "statutory silence" and score all out-of-state anticipatory crime convictions as nonperson crimes.

Jones relies on K.S.A. 2017 Supp. 21-6811(g). This subsection provides that for purposes of criminal history, a prior felony conviction of an attempt to commit a crime shall be treated as a person or nonperson crime in accordance with the designation assigned to the underlying crime. It states:

> "A prior felony conviction of an attempt, a conspiracy or a solicitation as
> provided in K.S.A. 21-3301, 21-3302 or 21-3303, prior to their repeal, or K.S.A. 21-

4

5301, 21-5302 or 21-5303, and amendments thereto, to commit a crime shall be treated as a person or nonperson crime in accordance with the designation assigned to the underlying crime." K.S.A. 2017 Supp. 21-6811(g).

That language was meant to clarify that an attempt, conspiracy, or solicitation to commit a person crime is also a person crime for criminal history purposes. *State v. Dawson*, No, 113,233, 2016 WL 2772864, at *4 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1322 (2017); see *State v. Williams*, No. 114,778, 2017 WL 4558234, at *6 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* November 13, 2017.

Jones contends, however, that K.S.A. 2017 Supp. 21-6811(g) does not apply to any out-of-state crimes, as a careful reading of its plain language shows. He argues that the statutory language italicized below expressly limits its application only to anticipatory crimes committed in Kansas: "[a] prior felony conviction of an attempt . . . *as provided in . . . K.S.A. 2017 Supp. 21-5301* . . . to commit a crime shall be treated as a person or nonperson crime in accordance with the designation assigned to the underlying crime." (Emphasis added.) K.S.A. 2017 Supp. 21-6811(g). Jones then contends that the statute covers only attempts *pursuant to or under* K.S.A. 2017 Supp. 21-5301 (attempt) and the other statutes related to anticipatory crimes listed in subsection (g). He argues that only Kansas convictions of attempt can meet that language.

But Jones' argument distorts the relevant statutory language. It may well be that Jones' Missouri conviction is not a conviction *under* K.S.A. 2017 Supp. 21-5301. But we do not read subsection (g) so narrowly. Its plain language states, instead, that a prior felony conviction of an attempt "*as provided in . . .* K.S.A. 2017 Supp. 21-5301 . . . to commit a crime shall be treated as a person or nonperson crime in accordance with the designation assigned to the underlying crime." K.S.A. 2017 Supp. 21-6811(g). Jones' prior felony conviction of an attempt in Missouri may be a conviction *as provided in* the

Kansas attempt statute if the elements of that crime are the same in both states. We thus reject Jones' interpretation of subsection (g).

*We do not apply the rule of lenity*

But even had we agreed with Jones' interpretation of 21-6811 (g), we would not agree with his ensuing argument that the language creates a gap which requires us to treat all anticipatory crimes as nonperson crimes. Here, Jones relies on *State v. Horselooking*, 54 Kan. App. 2d 343, 400 P.3d 189 (2017), *rev. granted* 307 Kan. 990 (2017), a case in which we examined a tribal conviction which the tribe had not classified as a misdemeanor or as a felony. We applied the rule of lenity, 54 Kan. App. 2d at 354, which requires the courts to apply a reasonable reading favoring the defendant when the language of a criminal statute fosters a genuine ambiguity. See *State v. Coman*, 294 Kan. 84, Syl. ¶ 5, 273 P.3d 701 (2012) ("Under the rule of lenity, criminal statutes must be strictly construed in favor of the defendant."); cf. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). We classified defendant's prior tribal conviction as a misdemeanor, rather than as a felony, because our sentencing statute does not explain how we should classify an out-of-state conviction as a felony or a misdemeanor when the convicting jurisdiction itself does not do so. 54 Kan. App. 2d at 354.

But that is not the case here. Missouri designated Jones' crime of attempted first-degree robbery as a felony, and the sole issue is whether we should consider that felony to be a person or nonperson crime. The KSGA is not silent on that issue, unlike the misdemeanor v. felony issue in *Horselooking*. Instead, K.S.A. 2017 Supp. 21-6811 explains in all-inclusive language how to classify out-of-state crimes:

> "(e)(1) Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history.

(2) An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction.

. . . .

(3) The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson, comparable crimes under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable crime in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime." K.S.A. 2017 Supp. 21-6811(e).

We are unpersuaded by Jones' claim that the KSGA does not state how to classify out-of-state anticipatory crimes. K.S.A. 2017 Supp. 21-6811(e)(3) applies to all out-of-state convictions, including convictions for anticipatory crimes.

B. *Does K.S.A. 2017 Supp. 22-3504(3) act as a jurisdictional bar*?

Jones next claims that the district court improperly classified his prior Missouri conviction as a person crime because Missouri's crime of attempt is not comparable to Kansas' crime of attempt. See *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018). In response, the State claims that this court lacks jurisdiction to hear this claim based on K.S.A. 2017 Supp. 2-3504(3).

The Kansas Legislature amended K.S.A. 22-3504 by adding subsection (3). "The plain purpose of the amendment is to define and limit the scope of a statutorily created procedure by which a person convicted of a crime can seek correction of a sentence." *State v. Dawson*, 55 Kan. App. 2d 109, 117, 408 P.3d 995 (2017), *rev. granted* 308 Kan. __ (June 26, 2018). This new subsection, effective May 18, 2017, states:

"'Illegal sentence' means a sentence: Imposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be

7

served at the time it is pronounced. A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." K.S.A. 2017 Supp. 22-3504(3).

Jones' claim of an illegal sentence was first raised after May 2017, when this subsection took effect. The State claims that Jones' sentence is not illegal because his claim of illegality is based on *Wetrich*—a change in the law that occurred in 2018 after Jones' sentence was pronounced in 2016.

We do not agree that the amendment poses a jurisdictional bar. The State cites no legal authority supporting its position that the amendment is jurisdictional. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief an issue. *State v. Tappendick*, 306 Kan. 1054, Syl. ¶ 2, 400 P.3d 180 (2017). In *Dawson*, we stated that the amendment "does not affect a court's subject matter jurisdiction." 55 Kan. App. 2d at 116. But even if the State is correct, we cannot rule on this jurisdictional issue without first determining the merits of the issue being appealed—whether Jones' sentence fits the definition of an illegal sentence.

C. *Is Jones' prior Missouri conviction comparable to a Kansas crime?*

As noted above, we determine whether the prior Missouri conviction was properly classified as a person crime by looking to a comparable crime in Kansas at the time the defendant committed the current crime of conviction. K.S.A. 2017 Supp. 21-6811(e)(3); *State v. Keel*, 302 Kan. 560, 590, 357 P.3d 251 (2015). If we find no comparable Kansas crime, we must classify the prior conviction as a nonperson crime. K.S.A. 2017 Supp. 21-6811(e)(3). But if Kansas has a comparable crime and Kansas classifies that crime as a person crime, we also classify the out-of-state conviction as a person crime. K.S.A. 2017 Supp. 21-6811(e)(3).

8

*We review Wetrich's test for comparability*

In March 2018, the Kansas Supreme Court construed the term "comparable" and adopted an identical-or-narrower test. *Wetrich*, 307 Kan. at 559-60. The court resorted to various dictionary definitions and thesaurus entries of the term "comparable" to find that term to be ambiguous. That ambiguity made it appropriate to consider legislative history. The court then found that using an identical-or-narrower rule to determine comparability would further one goal of the KSGA—"an even-handed, predictable, and consistent application of the law across jurisdictional lines." 307 Kan. at 561-62. To achieve that goal, our Supreme Court established the following test:

> "For an out-of-state conviction to be comparable to an crime under the Kansas criminal code, within the meaning of K.S.A. 2017 Supp. 21-6811(e)(3) . . . the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. 552, Syl. ¶ 3.

*Wetrich* based its decision solely on statutory interpretation and not on constitutional grounds. 307 Kan. at 558.

*We apply* Wetrich*'s test for comparability*

We first review the elements of the out-of-state crime. Missouri's attempt statute underlying Jones' prior conviction of attempted first-degree robbery provided:

> "1. A person is guilty of attempt to commit a crime when, with the purpose of committing the crime, he does any act which is a substantial step towards the commission of the crime. A **'substantial step'** is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the crime." Mo. Rev. Stat. § 564.011.1 (2000).

9

Missouri courts construe this statute as having two elements: (1) The defendant has the purpose to commit the underlying crime, and (2) the defendant does an act which is a substantial step toward the commission of that crime. *State v. Withrow*, 8 S.W.3d 75, 78 (Mo. 1999).

We then compare the elements of the Missouri crime to the elements of Kansas' attempt statute for Jones' current crimes of conviction. Kansas defines attempt as:

> "[A]ny overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 2017 Supp. 21-5301(a).

This crime, as detailed in the Kansas pattern instructions, has three elements:

> "1. The defendant performed an overt act toward the commission of [the underlying crime].
> "2. The defendant did so with the intent to commit [the underlying crime].
> "3. The defendant failed to complete commission of [the underlying crime]." PIK Crim. 4th 53.010.

The primary, if not sole, difference between these attempt statutes is that Missouri requires a "substantial step" while Kansas requires an "overt act" toward commission of the underlying crime—here, robbery.

*Is this a distinction without a difference?*

The State agrees that Missouri's definition of an attempt is technically broader than Kansas' definition, as theoretically one could take a substantial step that is not also an

10

overt act. But the State contends that this is a mere distinction without a practical difference—any acts sufficient to constitute a substantial step under Missouri's law would also constitute an overt act under Kansas law. See *State v. Brown*, 306 Kan. 1145, 1163, 401 P.3d 611 (2017) (defining overt act as "the first or subsequent step" toward the commission of the crime). It thus argues that the crimes of attempt are comparable as defined in *Wetrich*, despite their different terminology. To do so, the State relies on decisional law interpreting and applying the "substantial step" and "overt acts" requirements under Missouri and Kansas law.

### *Missouri's substantial step requirement is broader than Kansas' overt act requirement*

Missouri courts have determined that one may complete a substantial step without completing an overt act—an act beyond mere preparation is not required for an attempt. "Missouri has abandoned the requirement of some act beyond mere preparation or the requirement of an overt act in attempt law." *State v. Young*, 139 S.W.3rd 194, 198 (Mo. App. 2004.) Under Missouri's substantial step requirement, "mere preparation *may qualify* as a substantial step under certain circumstances. . . . *Any* conduct clearly showing a firmness of intent to complete the crime is sufficient." *State v. Kusgen*, 178 S.W.3d 595, 599 (Mo. App. 2005).

The Missouri Supreme Court, en banc, has found that its prior attempt statute, which required an overt act, was a tougher, or narrower, test than its current attempt statute, which requires only a substantial step. *State v. Molasky*, 765 S.W.2d 597, 600 (Mo. 1989) (finding the statutory change to "substantial step" "lowered the threshold needed to find the offense of attempt by shifting the emphasis away from what an actor still had to accomplish and refocusing instead upon what the actor had already done."). *Molasky* found an inmate's solicitation of a fellow inmate to commit murder through conversations which were unaccompanied by any other corroborative action was not a

11

"substantial step" towards the commission of the offense sufficient to sustain a second-degree attempted murder conviction. 765 S.W.2d at 602-03.

Ten years later, the Missouri Supreme Court, again sitting en banc, explained that some of its cases had incorrectly merged the common-law elements of attempt, which include an overt act, into its "substantial step" standard. It found substantial step attempt was a lesser included offense of common-law attempt, which requires an overt act:

> "Under *Reyes*, common law attempt was the more difficult offense to prove in that it required an overt act showing that the defendant's conduct nearly approached consummation of the offense, not just a substantial step toward the completed offense. [862 S.W.2d] at 384. Substantial step attempt was, in effect, a lesser included offense of common law attempt." *Withrow*, 8 S.W.3d at 78, *holding modified on other grounds by State v. Claycomb*, 470 S.W.3d 358 (Mo. 2015).

*Withrow* found the evidence failed to show the defendant's participation in a substantial step of the attempted manufacture of a drug where it showed neither defendant's constructive possession of the closet in which drugs were found, nor defendant's involvement in drug-making, nor defendant's possession of materials used to commence the drug-making process—merely defendant's repeated presence in the house. 8 S.W.3d at 80-81.

In contrast, Kansas law requires that a defendant's acts "'extend beyond mere preparations . . . and must approach sufficiently near to the consummation of the crime to stand either as "the first or subsequent step" toward the commission of the crime.'" *Brown*, 306 Kan. at 1163 (quoting *State v. Peterman*, 280 Kan. 56, 61, 118 P.3d 1267 [2005]). Kansas courts distinguish mere preparation, which is insufficient for attempt, from post-preparation movement, which is sufficient:

12

"[P]reparation consists of devising or arranging the means or measures necessary for the commission of the offense and . . . attempt is the direct movement toward the commission after the preparations are made." *State v. Garner*, 237 Kan. 227, 239, 699 P.2d 468 (1985).

A person may thus be convicted in Missouri of attempt based on mere preparation, without taking an overt act, but not so in Kansas. Missouri's attempt statute is facially broader than Kansas' attempt statute.

Jones cites *State v. Lammers*, 479 S.W.3d 624, 632-35 (Mo. 2016) to illustrate the difference between the two standards. Jones contends that the Missouri Supreme Court found sufficient evidence for Lammers' conviction of attempted first-degree assault based on mere preparation which would not constitute an overt act in Kansas. The defendant bought two assault rifles from Walmart, took them to a friend who explained how to use them, then practiced shooting them. Defendant's mother learned about the guns and called law enforcement, who interrogated the defendant. Defendant admitted that before buying the guns he had thought about committing a mass shooting at a Walmart but changed his mind after target practice. *Lammers* found that by purchasing assault rifles and engaging in target practice, defendant had taken substantial steps sufficient to constitute an attempt. 479 S.W.3d at 633-34. We agree with Jones that those acts would not be considered overt acts toward the crime of assault in Kansas.

The State counters that the substantial steps in *Lammers* and other Missouri cases would necessarily be overt acts in Kansas. First, the State suggests that Missouri's substantial step requirement sets a higher bar than its language would suggest. See *Molasky*, 765 S.W.2d at 602 (finding no substantial step); *Withrow*, 8 S.W.3d at 78 (same). And *Molasky*'s concluding comment supports the State's conclusion: "Missouri cases indicate a substantial step is evidenced by actions, indicative of purpose, not mere conversation standing alone." 765 S.W.2d at 602. The cases the Missouri Supreme Court

13

cited in support of that conclusion show substantial steps that Kansas would consider to be overt acts: "See e.g., *State v. Molkenbur,* 723 S.W.2d 894 (Mo. App. 1987) (defendant grabbed victim, trying to pull her back into an apartment), *State v. Thomas*, 670 S.W.2d 138 (Mo. App. 1984) (defendant entered victim's apartment, threatening her with knife), *State v. Walker*, 743 S.W.2d 99 (Mo. App. 1988) (defendant carried victim to back of van, restraining her while her clothing was being removed)." *Molasky*, 765 S.W.2d at 602, n.9. But those acts go beyond mere preparation, unlike the acts in *Lammers*.

Second, the State argues that Kansas has set a low threshold for overt acts in attempt law. The State relies on *State v. Sheikh*, 30 Kan. App. 2d 188, 190-91, 41 P.3d 290 (2001) (finding defendant's acts of removing 672 pseudoephedrine pills from their bubble packs, putting the pills and a firearm in his vehicle, then driving to another location amounted to overt acts in furtherance of the attempt crime). Specifically, the State focuses on *Sheikh*'s suggestion that merely reconnoitering a place and collecting items in preparation for a crime can be overt acts sufficient to support an attempt in Kansas. *Sheikh* relied on Tenth Circuit Court of Appeals cases which found sufficient evidence of an attempt based on mere reconnoitering and collecting items, stating:

> "The realistic emphasis on what had been done, rather than dwelling on what remained to be done is consistent with our decision in *United States v. Prichard*, 781 F.2d 179, 181-82 (10th Cir. 1986), in which we held that reconnoitering the object of a crime together with collecting the instruments to be used in that crime, constituted an attempt.' [*Saviano*,] 843 F.2d at 1297-98." *Sheikh*, 30 Kan. App. 2d at 191.

We find the State's reliance on *Sheik* to be misplaced for two reasons. First, *Sheikh* failed to recognize that the Tenth Circuit in *United States v. Prichard*, 781 F.2d 179, 181 (10th Cir. 1986), and in *United States v. Saviano*, 843 F.2d 1280, 1296-97 (10th Cir. 1988), required only a "substantial step," rather than an overt act, toward the commission of the crime. See; *Saviano*, 843 F.2d at 1296-97. Thus neither *Prichard* nor *Saviano* holds

14

that mere reconnoitering and collecting, i.e, acts of mere preparation, are sufficient to constitute overt acts as required under Kansas law for attempt. In contrast, Missouri's current attempt statute is patterned after Model Penal Code § 5.01 (1985), which recognizes that "reconnoitering the place contemplated for the commission of the crime" is not insufficient as a matter of law to constitute a substantial step for purposes of an attempt. See *Molasky*, 765 S.W.2d at 600-01.

Second, *Sheikh*'s procedural posture distinguishes it from this case. There, we were asked whether certain acts could amount to overt acts sufficient to withstand a motion to dismiss the charge of attempted manufacture of a drug. Our standard of review was, accordingly, quite favorable to the State, as we drew inferences favorable to the prosecution in determining whether the evidence was sufficient to cause a person of ordinary prudence and caution to entertain a reasonable belief, or probable cause, of the accused's guilt. 30 Kan. App. 2d at 189-90. We were not asked in *Sheikh*, as we are here, to determine, as a matter of law, whether certain acts could constitute a substantial step without also being an overt act for purposes of conviction of an attempt.

Determining whether certain events constitute an overt act rather than mere preparation for purposes of attempt is a fact-based inquiry not governed by definite rules:

> "[N]o definite rule as to what constitutes an overt act for the purposes of attempt can or should be laid down. Each case must depend largely on its particular facts and the inferences which the jury may reasonably draw therefrom. The problem should be approached with a desire to accomplish substantial justice. It has been said that mere preparation is not sufficient. The accused must have taken steps beyond mere preparation by doing something directly moving toward and bringing nearer the crime he intends to commit. It has been said that there must be some appreciable fragment of the crime committed." *Garner*, 237 Kan. at 238.

15

Nonetheless, caselaw demonstrates the definite rule in Kansas that for an attempt conviction, the accused must have taken steps beyond mere preparation. See *State v. Hargrove*, 48 Kan. App. 2d 522, 563-64, 293 P.3d 787 (2013) (finding sufficient evidence of overt acts that "exceeded mere preparation" and justified attempt conviction); *State v. Capps*, 33 Kan. App. 2d 37, 40, 99 P.3d 138 (2004) (finding jury instruction error; noting the jury especially needed to hear that an overt act is something more than mere preparation). See also *State v. Cherry*, 279 Kan. 535, 543, 112 P.3d 224 (2005) (citing *Capps* with approval). Not so in Missouri, where mere preparation will support an attempt conviction.

Based on the statutory elements of the relevant statutes, as well as on the decisional law interpreting them, we find the elements of attempt in Missouri to be broader than the elements of attempt in Kansas.

We find it unnecessary to reach Jones' claim that Missouri's crime of first-degree robbery is comparable to the Kansas crime of theft by threat, a nonperson crime. Even assuming the elements of the two underlying crimes are identical, the difference in the elements of the two States' crimes of attempt is sufficient to render the two crimes not comparable, as that term is defined in *Wetrich*. The district court thus incorrectly scored Jones' prior Missouri conviction as a person felony. This resulted in an incorrect criminal history score and an illegal sentence.

*Was* Wetrich *a "change in the law" within the meaning of K.S.A. 2017 Supp. 22-3504(3)?*

We now reach the State's contention that even if Jones' sentence is otherwise illegal, as we have found it to be, the 2017 amendment to K.S.A. 22-3504 means that his sentence, legal at the time it was pronounced, is not rendered illegal by later changes in the law. That amendment provides:  "A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." K.S.A. 2017 Supp. 22-

16

3504(3). The State contends that the illegality of Jones' sentence is based solely on *Wetrich*, a 2018 case which changed the law after Jones' sentence was pronounced in 2016. This requires us to determine whether subsection (3) is retroactive and whether its terms apply here. We address this latter question first.

### *Was* Wetrich *a change in the law?*

Jones next argues that *Wetrich*'s holding requiring application of the identical-or-narrower rule was a change in the law within the meaning of that phrase in K.S.A. 2017 Supp. 22-3504(3). The State's sole analysis of this issue follows:  (1) Kansas has historically applied a common-sense definition of "comparable" that did not require prior crimes to arise under identical or narrower elements; (2) the Supreme Court issued a new rule in *Wetrich* by adopting an "identical or narrower" test for comparability; and (3) *Wetrich*'s new rule is a change in the law that occurred after Jones' sentence was pronounced.

Facially, this simple argument has logical appeal. As the State argues, the Kansas Supreme Court, as recently as in *State v. Williams*, 299 Kan. 870, 873, 326 P.3d 1070 (2014) echoed and applied its prior holding in *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003), that crimes need not have identical elements to be comparable for purposes of making criminal history person or nonperson designations:

> "When designating a prior out-of-state crime of conviction as a person or nonperson offense in Kansas, 'the offenses need only be comparable, not identical.' *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003). There, we held the Kansas crime that was 'the closest approximation' of the out-of-state crime was a comparable offense, and we explicitly ruled the crimes need not have identical elements to be comparable for making the person or nonperson designation. 276 Kan. at 179." *Williams*, 299 Kan. at 873.

17

*Wetrich*, in common parlance, changed the law by requiring that the out-of-state crime have identical or narrower elements than the Kansas crime to which it is compared.

We applied the change in the law provision of K.S.A. 2017 Supp. 22-3504(3) only once, in *Dawson.* There we found that "[t]he analysis and holdings of our Supreme Court in *Dickey I* and *II* were not merely restatements of that court's prior decisions or applications of earlier holdings to different facts, they were a change in the law." *Dawson*, 55 Kan. App. 2d at 118. *Dawson* found a sentence is not an illegal sentence based on *Dickey*, if that sentence was final prior to the decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Nonetheless, we do not believe the change in the law provision applies here. In the same way that a legislative amendment may be "'deemed to clarify relevant law rather than effect a substantive change in the law,'" we are convinced that the Supreme Court would deem *Wetrich* to have clarified rather than changed decisional law. Cf. *White v. State*, 308 Kan. 491, 503, 421 P.3d 718 (2018). We reach this conclusion based on three reasons explained below: (1) The Supreme Court's treatment in *Wetrich* of its precedent; (2) the Supreme Court's subsequent characterizations of *Wetrich*; and (3) the timing of the matter.

First, as our court more fully explained in *State v. Smith*, No. 118,042, 56 Kan. App. 2d __, 2018 WL 43742273, at *7 (Kan. App. 2018), a judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision. See *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13, 114 S. Ct. 1510, 128 L. Ed. 2d 274 (1994). We agree with the analysis of the *Smith* panel and adopt its rationale here. *Wetrich'*s treatment of its prior cases illustrates that principle of law. It did not squarely address its prior, explicit rulings in *Williams* and *Vandervort* that "the crimes need not have identical elements to be comparable for making the person or nonperson designation." *Wetrich'*s only mention of those cases was in illustrating the conflict among

18

Court of Appeals' panels on this topic, largely by quoting from *State v. Moore*, 52 Kan. App. 2d 799, 813-14, 377 P.3d 1162 (2016):

"Further, *Moore* declared that 'there's no [Kansas] statutory requirement that an out-of-state crime be identical or narrower than the comparable Kansas offense' and observed that *Dickey* had not overruled 'past Kansas caselaw holding that the comparable Kansas crime doesn't have to be identical to the prior-conviction statute and that the question is whether the statutes prohibit similar conduct. See, *e.g.*, *Williams*, 299 Kan. at 873 (quoting *Vandervort*, 276 Kan. at 179); *State v. Riolo*, 50 Kan. App. 2d at 353 (quoting *Barajas*, 43 Kan. App. 2d at 643).' 52 Kan. App. 2d at 813-14. The *Vandervort* court suggested that the Kansas crime with 'the closest approximation' to the out-of-state crime was a comparable offense. *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003)." *Wetrich*, 307 Kan. at 558.

Curiously, *Wetrich* did not overrule, distinguish, disapprove, or even analyze *Vandervort* or *Williams*, despite the fact their holdings are irreconcilable with its own. Instead, *Wetrich* ignored them but for its passing reference above. Its analysis of comparable was independent of its prior interpretations of that word. 307 Kan. at 562. *Wetrich*'s approach to the issue thus appears to be tailored to reach the conclusion that it was not changing the law but was merely construing a long-standing term in a preexisting statute pursuant to its original legislative intent.

Second, we find additional guidance from the Supreme Court's characterizations of *Wetrich* in its subsequent cases. On the same day the Supreme Court decided *Wetrich*, it decided two other cases involving the designation of person crimes: *State v. Moore*, 307 Kan. 599, 602, 412 P.3d 965 (2018), and *State v. Buell*, 307 Kan. 604, 607, 412 P.3d 1004 (2018). Both cases applied *Wetrich*, but they took care to use scant, yet identical, language in referring to it, stating only:

"In *State v. Wetrich*, 307 Kan. 552, 561, 412 P.3d 984 (2018), we construed the meaning of 'comparable crime' in K.S.A. 2017 Supp. 21-6811(e)(3), and its ancestors, to

19

require that the out-of-state crime have identical or narrower elements than the Kansas crime to which it is being compared." *Moore*, 307 Kan. at 602; *Buell*, 307 Kan. at 607.

Neither *Moore* nor *Buell* alluded to *Wetrich* as having changed the law or imposed a new test. Instead, both cases parrot language that appears to be carefully crafted to say that *Wetrich* merely "construed the meaning" of a term in a statute. And the Supreme Court's later mentions of *Wetrich* are consistently terse, referring to it only as "resolving scoring of out-of-state burglary conviction as matter of statutory interpretation." *State v. Gensler*, 308 Kan. 674, 678, 423 P.3d 488 (2018).

Third, we find it significant that *Wetrich* was decided in March 2018, nearly 10 months after K.S.A. 2017 Supp. 22-3504(3) took effect. Courts generally presume that the Legislature acts with full knowledge about the statutory subject matter, including prior and existing law, and judicial decisions interpreting them. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1000, 348 P.3d 602 (2015). We apply that same presumption to the courts. The Supreme Court was therefore aware in 2018 when it decided *Wetrich*—a case involving an illegal sentence—of the Legislature's 2017 revisions that codified what an illegal sentence is. K.S.A. 2017 Supp. 22-3504(3).

For those reasons, we do not believe that the Supreme Court's unusual treatment of precedent in *Wetrich* and its cursory characterizations of *Wetrich* thereafter are mere happenstance. Instead, the Supreme Court's language in and about *Wetrich* appears to be designed to preclude success on the very argument that the State is now making—that *Wetrich* is a change in the law which cannot provide the basis for an illegal sentence. Accordingly, we find the change in the law provision in K.S.A. 2017 Supp. 22-3504(3) does not preclude Jones' sentence from being illegal. Accordingly, we need not determine whether this amendment applies retroactively. Even if it does apply retroactively, the

20

amendment does not apply here. Jones must be resentenced with his attempted first-degree robbery conviction from Missouri scored as a nonperson crime.

We note that *Wetrich*'s test is clear and relatively simple to apply. We are duty bound to apply it. But what that test gains in ease of application it loses in fairness and common sense. As this case illustrates, crimes that inherently involve harm to a person will now often be deemed to be nonperson crimes for those who have committed them in another state. For example, had this been an attempted murder case, the result, although absurd, would have been the same—a Missouri conviction for an attempted murder of a person can never be scored as a person crime in Kansas, post-*Wetrich*. Application of the test also has the disparate effect of treating persons who commit attempted murder in Kansas as person felons, while treating those who attempt to murder persons in Missouri as nonperson felons. Those who have committed prior person crimes in Kansas will receive a greater penalty than those who committed crimes on persons in other states, thwarting, rather than achieving, the KSGA's goal that "[s]anctions should be uniform and not related to . . . geographic location." *Wetrich*, 307 Kan. at 560.

*Did the district court abuse its discretion in revoking Jones' probation and imposing his underlying sentence?*

Jones also argues that the district court abused its discretion by acting unreasonably—it revoked Jones' probation although both parties had recommended it. In Jones' plea agreement, the parties recommended a dispositional departure to probation for the new charges and recommended Jones continue his probation in the previous cases. Both parties mentioned this option might allow Jones access to appropriate treatment programs in the hopes of reducing his risk of recidivism. The district court instead revoked Jones' probation, imposing his underlying sentence.

21

A district court may revoke probation upon finding that the defendant violated the terms of probation. *State v. Walker*, 260 Kan. 803, 808, 926 P.2d 218 (1996). The decision to revoke probation is within the discretion of the district court. *State v. Graham*, 272 Kan. 2, 4, 30 P.3d 310 (2001). Judicial discretion is abused if the judicial decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Moyer*, 302 Kan. 892, 906, 360 P.3d 384 (2015). The party asserting the trial court abused its discretion bears the burden of showing the abuse of discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012). So Jones bears that burden here.

The district court's ability to revoke probation is limited somewhat by statute. K.S.A. 2017 Supp. 22-3716(c)(1)(A)-(E) provides a system of intermediate sanctions the court must generally impose on an individual rather than revoking the probation. But the statute expressly allows the court to revoke probation instead of applying intermediate sanctions "[i]f the offender commits a new felony or misdemeanor while the offender is on probation." K.S.A. 2017 Supp. 22-3716(c)(8)(A). Jones stipulated to having committed two new felonies in violation of his probation. No intermediate sanctions were thus required.

Jones acknowledges that the district court had the authority to revoke his probation based on his commission of new felonies, but he argues that the district court's decision to revoke probation was unreasonable considering the parties' joint agreement and Jones' treatment options. Jones had completed inpatient drug treatment and was undergoing outpatient drug treatment when he committed his new crimes.

But the district court specifically found that Jones was not invested in his sobriety and posed a danger to society.

22

"I'm sorry, Mr. Jones. I'm not taking another risk. You got three presumptions for prison today. I am not going to find a way to grant you probation today. Enough is enough. This is your fourth case, three of which you possessed a weapon. You are a danger. If you were just out using drug, I would say, well, okay, you got this addiction, but you choose to have a weapon.

. . . .

"I have an obligation to society. The legislature said when somebody has the third drug crime, they should go to prison. The legislature said when somebody who is on probation commits another crime, because they are obviously not working their probation, they should go to prison. And then when you score a 5C, border box, that is presumptive prison.

"Now I can make findings that there are community-based programs that would promote your offender reformation, but I have already added that on May 11, 2016, and you obviously did not avail yourself of those programs. You were not invested in those programs. I cannot in good conscience make those findings, and I have an obligation to the public, quite frankly, to protect them from you, because when you got a weapon and you are high on meth, it only takes a bad set of circumstances before you use that weapon and kill somebody."

The district court judge considered Jones' repeated possession of drugs and weapons and revoked his probation. A reasonable person could agree with that determination, so the district court's decision to revoke probation was not an abuse of discretion.

We affirm the district court's revocation of probation, vacate Jones' sentence, and remand for resentencing with the correct criminal history score.

23